[Nos. 55740-3, 55741-1. En Banc. June 29, 1989.]

MICHAEL GONZALES, *Appellant,* v. THE DEPARTMENT OF LICENSING, *Respondent.*

LISA JO TOMKINS, *Appellant,* v. THE DEPARTMENT OF LICENSING, *Respondent.*

*Revelle, Ries & Hawkins, P.S.,* by *David M. Shank,* for appellant Gonzales.

*Douglas L. Cowan* and *Cowan, Hayne & Fox,* for appellant Tomkins.

*Kenneth O. Eikenberry, Attorney General, Jeffrey O.C. Lane, Senior Assistant,* and *James R. Silva, Assistant,* for respondent.

ANDERSEN, J.—

## FACTS OF CASES

In these consolidated cases, the State of Washington Department of Licensing revoked the driver's licenses of Michael Gonzales and Lisa Jo Tomkins for refusing to submit to a Breathalyzer test after being arrested for driving while intoxicated. Mr. Gonzales and Ms. Tomkins challenge their respective license revocations, claiming that they were not properly advised of their implied consent rights concerning the taking of this test. We affirm.

The case of *State v. Bartels,* 112 Wn.2d 882, 774 P.2d 1183 (1989), referred to herein, is a companion to the two cases here before us in the sense that *Bartels* was argued before this court at the same time.

## GONZALES CASE

On June 17, 1984, King County Police Officer Carolyn Dopps arrested Mr. Gonzales for driving while under the influence of intoxicating liquor. After taking him to the police station, the officer advised him of his rights concerning the taking of a Breathalyzer test. She informed him:

> You are under arrest for driving a motor vehicle while under the influence of intoxicating liquor. Further, you are now being asked to submit to a chemical test of your breath to determine the alcoholic content of your blood. You are now advised that you have the right to refuse this breath test; that if you refuse, your privilege to drive

will be revoked or denied by the department of licensing and that you have the right to additional tests administered by a qualified person of your own choosing and *at your own expense* and that your refusal to take the test *shall* be used against you in a subsequent criminal trial.

(Italics ours.) This case primarily concerns the effect of the emphasized language on the adequacy of these warnings.

After the officer read these warnings, Mr. Gonzales inquired about the effect of taking or not taking the Breathalyzer test on the status of his driver's license. The officer explained to him that if he refused to take the test, his license would be revoked for a year, and that if he was convicted of driving while intoxicated, he would lose his license for 90 days. The officer asked him to take the Breathalyzer test three separate times, each request being made approximately a minute after the previous request. Mr. Gonzales did not verbalize his refusal but nevertheless firmly declined to take the test. The Department revoked Mr. Gonzales' driver's license for 1 year for refusing to take the test, following which he appealed to the Superior Court for King County, which sustained the Department's decision.

### Tomkins Case

On January 22, 1985, Officer Randal Houser of the Medina/Clyde Hill Police Department arrested Ms. Tomkins for driving while under the influence of intoxicating liquor. The officer read Ms. Tomkins a form of implied consent warnings which included the following language:

You further have the right to take additional tests administered by a physician, or a qualified technician, chemist, registered nurse, or other qualified person of your own choosing and *at your own expense.*

(Italics ours.) This case also concerns the effect of this emphasized language on the adequacy of the warnings given.

Ms. Tomkins also refused to take the Breathalyzer test and the Department of Licensing revoked her driver's

license. The Superior Court sustained the Department's decision in her case as well.

These consolidated cases present two major issues, the first of which is common to both.

## ISSUES

ISSUE ONE. Can the Department of Licensing revoke a driver's license for refusal to take a Breathalyzer test if the implied consent warnings given to the driver include the language that additional tests may be obtained "at your own expense"?

ISSUE TWO. Can the Department of Licensing revoke a driver's license for refusal to take a Breathalyzer test if the implied consent warnings given to the driver state that a refusal to take the test "*shall* be used against you in a subsequent criminal trial"?

## DECISION

ISSUE ONE.

CONCLUSION. A driver must be afforded an opportunity to make a knowing and intelligent decision whether to take the Breathalyzer test. The statement that additional tests may be obtained "at your own expense" is inaccurate as to indigent drivers, and its inclusion in an implied consent warning could, therefore, deny an indigent driver the opportunity to make a knowing and intelligent decision. Mr. Gonzales and Ms. Tomkins, however, make no claim of indigency. Thus, the inaccurate language contained in their implied consent warnings did not prejudice them and does not serve as a ground to invalidate the revocation of their driver's licenses.

Under the implied consent statute, a person arrested for driving while under the influence of intoxicating liquor is deemed to have consented to a test of his or her breath or blood for purposes of determining the alcoholic content thereof.[1] Among other things, this is intended to provide

[1]RCW 46.20.308(1).

an efficient means of gathering evidence of intoxication.[2] A driver may, however, withdraw his or her consent to take the Breathalyzer test;[3] the driver's refusal to submit to the Breathalyzer test, however, will result in the revocation of his or her driver's license by the Department of Licensing.[4]

A driver also has the right under the implied consent statute to take additional tests.[5] The purpose of allowing such additional tests "is to afford a DWI suspect the opportunity to obtain evidence with which to impeach the results of a single Breathalyzer test". *State v. Stannard,* 109 Wn.2d 29, 35, 742 P.2d 1244 (1987).

Before administering the Breathalyzer test, a law enforcement officer must inform the driver of his or her rights concerning the taking of this test as well as of the consequences of a refusal. The implied consent statute requires as follows:

> The officer shall inform the person of his or her right to refuse the breath or blood test, and of his or her right to have additional tests administered by any qualified person of his or her choosing as provided in RCW 46.61.506. The officer shall warn the driver that (a) his or her privilege to drive will be revoked or denied if he or she refuses to submit to the test, and (b) that his or her refusal to take the test may be used in a criminal trial.

RCW 46.20.308(2) (part). Further, the statute referenced in the portion of the implied consent statute just quoted provides:

> The person tested may have a physician, or a qualified technician, chemist, registered nurse, or other qualified person of his own choosing administer one or more tests

---

[2]*Nowell v. Department of Motor Vehicles,* 83 Wn.2d 121, 124, 516 P.2d 205 (1973); 2 D. Nichols, *Drinking/Driving Litigation* § 20:01, at 2 (1985).

[3]RCW 46.20.308(2), (5).

[4]RCW 46.20.308(6).

[5]RCW 46.20.308(2); RCW 46.61.506(5).

in addition to any administered at the direction of a law enforcement officer.

RCW 46.61.506(5) (part).

The implied consent warnings read to Mr. Gonzales and Ms. Tomkins, hereinafter referred to as "the licensees", included the statement that they could obtain additional tests "at your own expense". This language does not appear in the statutes. The statutes set forth above provide that a person may obtain additional tests, but they are silent regarding who will pay the costs thereof. The "at your own expense" language appears to have had its origins in dicta from previous opinions of this court.[6]

The licensees contend that the inclusion of the "at your own expense" language in their implied consent warnings requires the invalidation of their driver's license revocations. We disagree.

The standard for determining whether a driver has been properly advised of his or her implied consent rights is set forth in *State v. Whitman Cy. Dist. Court,* 105 Wn.2d 278, 714 P.2d 1183 (1986). There, we first observed that "[t]he courts of this state have not addressed the warning requirements of the implied consent law on a constitutional basis, but rather as rights granted through the statutory process." *Whitman Cy.,* at 281. Then, after reviewing a number of cases on the subject, we concluded:

These cases clearly establish the proposition that the accused has a right under the implied consent statute to be afforded the opportunity to make a knowing and intelligent decision whether to submit to an evidentiary breath test. The fundamental issue for decision in this

---

[6]In *State v. Richardson,* 81 Wn.2d 111, 499 P.2d 1264 (1972), this court stated that "an operator who refuses to submit to a test for blood alcohol, is properly subject to license revocation if he was arrested by an officer having reasonable grounds to believe that he was operating the vehicle while under the influence of intoxicating liquor, who . . . advised him that he had the right to have additional tests made by a qualified person of his own choosing and *at his own expense.*" (Italics ours.) *Richardson,* at 117. *See also State v. Stannard,* 109 Wn.2d 29, 41, 742 P.2d 1244 (1987) (Utter, J., concurring) (also containing, but not discussing, the same "at his own expense" language).

case is whether the respective defendants were afforded such an opportunity based on the warnings which were given.

*Whitman Cy.,* at 282.[7] Accordingly, the relevant inquiry in the cases now before us is likewise whether the warnings given afforded the licensees the opportunity to make a knowing and intelligent decision whether to take the Breathalyzer test.

The implied consent statute mandates that several warnings be given. A driver must be informed: (1) "of his or her right to refuse the breath or blood test"; (2) "of his or her right to have additional tests administered by any qualified person of his or her choosing"; (3) "that . . . his or her privilege to drive will be revoked or denied if he or she refuses to submit to the test"; and (4) "that his or her refusal to take the test may be used in a criminal trial". RCW 46.20.308(2). The failure to give one of these warnings can deny a driver the opportunity to make a knowing and intelligent decision. In *Connolly v. Department of Motor Vehicles,* 79 Wn.2d 500, 487 P.2d 1050 (1971), this court invalidated the revocation of the defendant's driver's license where the driver was not informed of the right to take additional tests. The court in that case emphasized that this warning is mandated by the implied consent statute and reasoned that it must be given in order to afford the driver the opportunity to make a knowing and intelligent decision.[8]

---

[7]*See also State v. Richardson, supra; Department of Motor Vehicles v. McElwain,* 80 Wn.2d 624, 496 P.2d 963 (1972); *Connolly v. Department of Motor Vehicles,* 79 Wn.2d 500, 487 P.2d 1050 (1971); *Roethle v. Department of Licensing,* 45 Wn. App. 607, 726 P.2d 1001 (1986), *review denied,* 107 Wn.2d 1030 (1987); *Welch v. Department of Motor Vehicles,* 13 Wn. App. 591, 536 P.2d 172 (1975).

[8]*See Connolly,* at 504; *Richardson,* at 114 (explaining holding in *Connolly*). *See also Spokane v. Holmberg,* 50 Wn. App. 317, 745 P.2d 49 (1987) (drivers not informed that refusal may be used in subsequent criminal trial), *review denied sub nom. Box v. Grant Cy. Dist. Court,* 110 Wn.2d 1013 (1988).

We have also held that a driver was denied the opportunity to make a knowing and intelligent decision where all the warnings mandated by the implied consent statute had apparently been given, but one of the warnings had not been accurately given. In *Whitman Cy.*, the drivers were warned about the use of a refusal to take the test in a criminal trial. However, the warning inaccurately stated that a refusal "shall", as opposed to "may", be so used. We there held that such a warning denied the drivers in that case the opportunity to make a knowing and intelligent decision and we suppressed the use of the Breathalyzer test results as evidence in the drivers' criminal trials.[9]

The warnings given to the licensees in the cases now before us were complete; they omitted none of the warnings mandated by the implied consent statute. Unfortunately, however, the warnings given were not entirely accurate.

In the case of *State v. Bartels*, 112 Wn.2d 882, 774 P.2d 1183 (1989), a companion to the cases herein, we also addressed the adequacy of an implied consent warning which included the statement that additional tests could be obtained "at your own expense". As we explained in that decision, this language is inaccurate as to indigent drivers.[10] Under our court rules, an indigent driver may in the appropriate case obtain reimbursement for the costs of an additional test.[11] Costs for which one is reimbursed are not

---

[9]*State v. Whitman Cy. Dist. Court,* 105 Wn.2d 278, 287, 714 P.2d 1183 (1986). *See also Welch v. Department of Motor Vehicles, supra* (driver inaccurately warned that refusal to submit to test "could" result in a suspension of his license).

[10]*State v. Bartels,* 112 Wn.2d 882, 774 P.2d 1183 (1989).

[11]CrRLJ 3.1(f) provides in pertinent part:
"(1) A lawyer for a defendant who is financially unable to obtain investigative, expert, or other services necessary to an adequate defense in the case may request them by a motion to the court.
"(2) Upon finding that the services are necessary and that the defendant is financially unable to obtain them, the court . . . shall authorize the lawyer to obtain the services on behalf of the defendant. The court, in the interest of justice and on a finding that timely procurement of necessary services could not await prior authorization, shall ratify such services after they have been obtained."

"at your own expense". The inclusion of this language in an implied consent warning could, therefore, deny an indigent driver the opportunity to make a knowing and intelligent decision whether to take the Breathalyzer test.[12]

▮▮ The licensees here, however, make no claim of indigency. Since the State has no obligation to cover the expense of additional tests for drivers who are not indigent,[13] the statement that they could obtain such tests "at your own expense" was, therefore, as to them, entirely accurate. Thus, as a true statement, the inclusion of this language in their implied consent warnings was not prejudicial.

The licensees, however, maintain that actual prejudice is not required. In this regard, they rely on the Court of Appeals decision in *Spokane v. Holmberg,* 50 Wn. App. 317, 745 P.2d 49 (1987), *review denied sub nom. Box v. Grant Cy. Dist. Court,* 110 Wn.2d 1013 (1988). In that case, the drivers were not given the part of the warning which concerns the use of a refusal to take the test in a criminal trial. The court stressed that this warning is mandated by the implied consent statute and suppressed the use of the Breathalyzer test results in the drivers' criminal trials.[14] In reaching its decision, the Court of Appeals declined to adopt a rule requiring actual prejudice; it concluded that "strict compliance is the better rule",[15] reasoning that "[s]ociety is penalized when officers derogate from the mandates of the Legislature."[16]

---

[12]*Bartels,* 112 Wn.2d at 889–90.

[13]*See State v. Stannard, supra; Blaine v. Suess,* 93 Wn.2d 722, 612 P.2d 789 (1980); Annot., *Drunk Driving: Motorist's Right to Private Sobriety Test,* 45 A.L.R.4th 11, § 6, at 26 (1986).

[14]*Holmberg,* at 322–24.

[15]*Holmberg,* at 324.

[16]*Holmberg,* at 324.

The *Holmberg* case, however, differs from the cases here before us in two critical respects.

First, while *Holmberg* involved a *criminal* action, the driver's license revocation cases herein are *civil* in nature. The drivers in *Holmberg* sought to suppress the use of their test results in a criminal action for driving while intoxicated.[17] The licensees in the cases before us, however, are contesting the validity of the revocation of their driver's licenses by the Department of Licensing, "a civil administrative proceeding . . ., separate and distinct from the criminal proceedings which might ensue following the arrest of an offending motorist." *Nowell v. Department of Motor Vehicles*, 83 Wn.2d 121, 124, 516 P.2d 205 (1973).

Important consequences flow from this criminal/civil distinction. It has been held, for example, that for license revocation purposes a driver need not have received or been advised of his or her right to counsel before deciding whether to take the test;[18] that the acquittal in a criminal action for driving while intoxicated has no bearing on the revocation of a license;[19] that the due process requirement that the prosecution make favorable evidence available to a criminal defendant does not extend to a license revocation proceeding;[20] and that the burden of proof in a license revocation proceeding is not beyond a reasonable doubt.[21]

---

[17]*Holmberg,* at 319–20.

[18]*Keefe v. Department of Licensing,* 46 Wn. App. 627, 731 P.2d 1161, *review denied,* 108 Wn.2d 1018 (1987); *Haas v. Department of Licensing,* 31 Wn. App. 334, 641 P.2d 717, *review denied,* 97 Wn.2d 1015 (1982).

[19]*Fritts v. Department of Motor Vehicles,* 6 Wn. App. 233, 492 P.2d 558 (1971); Annot., *Suspension or Revocation of Driver's License for Refusal To Take Sobriety Test,* 88 A.L.R.2d 1064, § 8, at 1076 (1963).

[20]*Turner v. Department of Motor Vehicles,* 14 Wn. App. 333, 541 P.2d 1005 (1975).

[21]*Bell v. Department of Motor Vehicles,* 6 Wn. App. 736, 740, 496 P.2d 545 (1972).

The second critical distinction between *Holmberg* and the two cases before us is that the warning in *Holmberg* was incomplete; it omitted an entire portion of the warning statutorily mandated by the implied consent law.[22] In contrast, the warnings given in the cases herein were complete; they merely contained additional language that is, under certain limited circumstances, inaccurate. Moreover, the additional language at issue had arguably, at least, been sanctioned by opinions of this court.[23]

We do not disagree with the Court of Appeals in *Holmberg* that a rule requiring actual prejudice to the driver is inappropriate in a criminal action where the arresting officer omits an entire portion of the statutory implied consent warnings. We do, however, conclude that such a rule is appropriate where the action is *civil* in nature, as here, and where the officer has given all of the warnings, but merely failed to do so in a 100 percent accurate manner.

Our decision to adopt a rule requiring prejudice in the present cases is buttressed by a recent Oregon decision. In *Wimmer v. Motor Vehicles Div.*, 75 Or. App. 287, 706 P.2d 182, *review denied*, 300 Or. 367, 712 P.2d 109 (1985), the driver refused to submit to the state's breath test and his license was suspended. Prior to his refusal, the driver had been informed that he had the right to a second test only if he registered a .08 percent or greater reading on the state's breath test. The court concluded that this was inaccurate because, under the Oregon implied consent statute, a driver has a right to a second test regardless of the results of the state's test.[24] Nonetheless, the court there concluded that the driver was not prejudiced by this inaccuracy:

---

[22]*See Bartels,* 112 Wn.2d at 889.

[23]*See State v. Richardson,* 81 Wn.2d 111, 117, 499 P.2d 1264 (1972); *State v. Stannard,* 109 Wn.2d 29, 41, 742 P.2d 1244 (1987) (Utter, J., concurring).

[24]*Wimmer v. Motor Vehicles Div.,* 75 Or. App. 287, 290, 706 P.2d 182, *review denied,* 300 Or. 367, 712 P.2d 109 (1985).

There is no indication that the inaccurate advice influenced petitioner's decision not to take the test, nor can we imagine any plausible, logical connection between a decision *not* to take a breath test and the failure to be informed of a right to an independent test if the blood alcohol content is less than .08 percent. Petitioner's refusal did not result from the inaccurate advice of rights.

*Wimmer,* 75 Or. App. at 290–91. The Oregon court remanded the case with instructions to reinstate the suspension.[25]

We hold that since the licensees in the two cases before us were not prejudiced by the statement that additional tests could be obtained "at your own expense", such language in their implied consent warnings does not serve as grounds for invalidating the revocation of their driver's licenses.

Issue Two.

Conclusion. The accurate form of the implied consent warning is that a refusal to take the Breathalyzer test "may" be used in a criminal trial. The language that a refusal "shall" be so used is inaccurate and it could mislead a driver into taking the Breathalyzer test. Since Mr. Gonzales did *not* take the Breathalyzer test, however, he could not have been prejudiced by the inaccurate warning and that warning thus does not serve as a basis to invalidate the revocation of his driver's license.

The implied consent statute requires a driver to be informed that "his or her refusal to take the test *may* be used in a criminal trial". (Italics ours.) RCW 46.20.308(2) (part). The warning read to Mr. Gonzales, however, stated that the refusal to take the test "*shall* be used against you in a subsequent criminal trial." Mr. Gonzales maintains that this use of the word "shall" in his implied consent warning requires that the revocation of his license be invalidated. While Mr. Gonzales correctly argues that use of the

---

[25]*Wimmer,* 75 Or. App. at 291.

word "shall" was improper, we do not agree that its use justifies a reversal of his license revocation.

We recently addressed the use of this same language in *State v. Whitman Cy. Dist. Court,* 105 Wn.2d 278, 714 P.2d 1183 (1986). As there noted, the use of the word "shall" rendered the warning inaccurate.[26] A refusal to submit to the Breathalyzer is admissible in a criminal trial where the defendant opens the controversy by challenging the credibility or competence of the examining officers, but it is not admissible in the prosecution's case in chief.[27] Thus, such evidence "may" be used in a criminal trial, but its use is not certain, as suggested by the word "shall".

> The word "may" merely expresses a contingency that may be possible, nothing more. It suggests that there is a possibility that his refusal will be used against him. The word "shall" conveys to the accused absolute certainty that his refusal would be subsequently used against him.

*Whitman Cy.,* at 285.

As we also explained in *Whitman Cy.,* the use of the "shall" warning there given was misleading.[28] This is because the warning that a refusal "may" be used in a criminal trial encourages a driver to submit to the Breathalyzer test in order to avoid the negative consequences that might result from a refusal to take this test.[29] A warning that a refusal "shall" be used in a criminal trial makes these negative consequences more probable, and thus encourages a driver to take the Breathalyzer test even more so than does a warning that a refusal "may" be used. As we explained in *Whitman Cy.,* a warning using "shall" "contains a more coercive impact than that required by

---

[26]*See State v. Whitman Cy. Dist. Court,* 105 Wn.2d 278, 284–85, 714 P.2d 1183 (1986).

[27]*Whitman Cy.,* at 284; *State v. Zwicker,* 105 Wn.2d 228, 238, 713 P.2d 1101 (1986).

[28]*See Whitman Cy.,* at 286.

[29]*Whitman Cy.,* at 286.

statute."[30] The warning that a refusal "shall" be used in a criminal trial could, therefore, mislead a driver into taking the Breathalyzer test.

We held in *Whitman Cy.*, therefore, that the drivers therein had been denied the opportunity to make a knowing and intelligent decision.[31] That holding is not, however, determinative of the present case because the drivers in *Whitman Cy.* actually took the Breathalyzer test whereas Mr. Gonzales did not take it. Thus, while the inaccurate warning may have prejudiced the drivers in *Whitman Cy.*, by misleading them into taking the Breathalyzer test, it did not prejudice Mr. Gonzales.

As discussed above, while a rule requiring prejudice may not be appropriate in a *criminal* action where the officer omits an entire portion of the statutorily mandated warning, such a rule is appropriate in a *civil* action where the officer gave all of the required warnings, but nonetheless failed to do so in an entirely accurate manner. This is the latter type case. We reiterate that the proceeding by which Mr. Gonzales' driver's license was revoked by the Department of Licensing was a *civil* action.[32] In addition, the officer gave him all of the warnings mandated by the implied consent statute. The use of the word "shall" in that portion of the warning concerning the use of a refusal in a criminal trial rendered it inaccurate only to that limited extent. We conclude, therefore, that the rule requiring prejudice applies in this case.

Our decision in *Whitman Cy.* does not preclude the application of a prejudice rule. Indeed, *Whitman Cy.* had nothing to do with the prejudice issue. Since the drivers in that case may have been prejudiced by the inaccurate

---

[30]*Whitman Cy.*, at 285–86.

[31]*Whitman Cy.*, at 286–87.

[32]*Nowell v. Department of Motor Vehicles,* 83 Wn.2d 121, 516 P.2d 205 (1973).

warning, the court in *Whitman* did not even reach this issue.

The same is true of the Court of Appeals decision in *Welch v. Department of Motor Vehicles,* 13 Wn. App. 591, 536 P.2d 172 (1975). In *Welch,* the driver was warned that he "could" lose his license if he refused to submit to the test. Since revocation is certain upon such a refusal, that warning was inaccurate.[33] The Court of Appeals correctly concluded that the inaccurate warning denied the driver the opportunity to make a knowing and intelligent decision.[34] Again, however, the driver in that case may in fact have been prejudiced by the inaccurate warning. The warning that a refusal "will"[35] result in revocation encourages a driver to take the Breathalyzer test. The warning that a refusal "could" result in revocation does not encourage a driver to take the test to the same degree as the correct form of the warning that a refusal "will" result in revocation.[36] The word "could", therefore, may mislead a driver into refusing to take the test. The driver in *Welch* refused to take the test,[37] and he may very well, therefore, have been prejudiced by the inaccurate warning. As in *Whitman Cy.,* the court in *Welch* did not reach the prejudice issue.

Since Mr. Gonzales was not prejudiced by the warning that a refusal "shall" be used in a criminal trial, we decline to invalidate the civil revocation of his driver's license on that ground.

Mention needs to be made that Mr. Gonzales also claims that he was confused over the consequences of a

---

[33]*Welch v. Department of Motor Vehicles,* 13 Wn. App. 591, 592, 536 P.2d 172 (1975).

[34]*Welch,* at 592.

[35]RCW 46.20.308(2).

[36]*See Welch,* at 592.

[37]*Welch,* at 591.

refusal to take the Breathalyzer test. Where a driver objectively manifests confusion over his or her implied consent rights, the officer is required to clarify them.[38] The issue of confusion is a question of fact,[39] however, and in this case the Superior Court resolved that issue by finding as a fact that "[Mr. Gonzales] was not confused, but rather undecided".[40] The record supports that finding.[41] We perceive no error in this regard.

The superior court judgments affirming the driver's license revocations in both of these cases are affirmed.

CALLOW, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, PEARSON, DURHAM, and SMITH, JJ., concur.

Reconsideration denied September 21, 1989.

---

[38]*Schoultz v. Department of Motor Vehicles*, 89 Wn.2d 664, 669, 574 P.2d 1167 (1978); *Strand v. Department of Motor Vehicles,* 8 Wn. App. 877, 883, 509 P.2d 999 (1973).

[39]*Schoultz,* at 669; *Strand,* at 883.

[40]Findings of Fact, Conclusions of Law, and Order and Judgment, at 3.

[41]The following excerpt from Mr. Gonzales' testimony before the superior court amply justifies its finding:
Q. Did you ask [the officer] any more questions at that time?
A. I kept asking the same question, "Will I lose my license?"
Q. And [the officer] responded to you, didn't she?
A. Well, [the officer] said, "You're going to lose your license," you know, and I said, "Well"—I was thinking of my job. I thought if I lost it, I'd lose my job. That's my concern.