[Nos. 61890-9; 62225-6.    En Banc.    October 12, 1995.]

THE STATE OF WASHINGTON, *Petitioner*, v. OSCAR C. TREVINO, *Respondent*.

THE STATE OF WASHINGTON, *Respondent*, v. TINA M. MIESSE, *Appellant*.

*James R. Sweetser, Prosecuting Attorney*, and *Larry D. Steinmetz, Deputy*, for petitioner State.

*Ronald D. Ness & Associates*, by *Ronald D. Ness* and *John L. Cross*, for appellant Miesse.

*Walter V. Waltz*, for respondent Trevino.

*Russell D. Hauge, Prosecuting Attorney*, and *Pamela B. Loginsky* and *Rhonda Kalil, Deputies*, for respondent State.

ALEXANDER, J. — In this consolidated appeal, we are called upon to decide essentially one question: is suppression of breath analysis test results required, notwithstanding an absence of prejudice to a DUI suspect, when the arresting officer, prior to inquiring about or visually checking the contents of the suspect's mouth, either fails to (1) inform the suspect of his or her right to counsel pursuant to CrRLJ 3.1(c)(1), or (2) give the suspect an implied consent warning? We answer that question negatively, and, consequently, reverse the decision of the Court of Ap-

peals, Division Three, in *State v. Trevino* and affirm the Kitsap County District Court in *State v. Miesse.*

# I

## FACTS

### A

#### *State v. Trevino*

At approximately 12:13 A.M. on January 1, 1993, Spokane County Deputy Sheriff Randy Strzelecki observed an automobile being driven in excess of the posted speed limit. Based on this observation, Strzelecki stopped the speeding vehicle. Upon approaching the stopped car, Strzelecki almost immediately observed that the driver, Oscar C. Trevino, showed signs of impairment. Strzelecki, therefore, administered a field sobriety test to Trevino. Strzelecki concluded that Trevino did not perform well on the test and, consequently, at 12:24 A.M., he arrested Trevino and took him to the Public Safety Building in downtown Spokane. At about 1:02 A.M., Trevino was asked by Strzelecki if he had anything in his mouth. Trevino responded, "No." (Clerk's Papers at 67.) The deputy then checked Trevino's mouth for foreign objects preparatory to commencing the fifteen-minute observation period that is to precede the taking of a sample of a suspect's breath on a breath analysis machine known as the BAC Verifier DataMaster.[1] At 1:05 A.M., Trevino was advised, for the

---

[1] WAC 448-13-040 provides, in part: "**Administration of breath test on the BAC Verifier DataMaster.** The following method for performing a breath test is approved by the state toxicologist pursuant to WAC 448-13-130 and includes the following safeguards to be observed by the operator prior to the test being performed. It must be determined that: (1) The person does not vomit or have anything to eat, drink, or smoke for at least fifteen minutes prior to administration of the test; and (2) the subject does not have any foreign substances, not to include dental work, fixed or removable, in his or her mouth at the beginning of the fifteen minute observation period. Such determination shall be made by either an examination of the mouth or a denial by the person that he or she has any foreign substances in mouth."

first time, of his right to counsel. This advice came as a part of a *Miranda* warning.[2] At 1:09 A.M., Trevino was given the implied consent warning required by RCW 46.20.308. Trevino signed a form indicating that he had received and understood both warnings.[3] Shortly thereafter, Trevino consulted with an attorney by telephone. Trevino then breathed into the machine at 1:20 A.M. and at 1:23 A.M. Analysis of these breath samples disclosed that Trevino's blood alcohol concentration was 0.24.

Strzelecki issued Trevino a citation for violating RCW 46.61.502, driving under the influence.[4] Prior to a trial in the Spokane County District Court, Trevino's attorney moved to suppress evidence of the deputy sheriff's question as to whether Trevino had anything in his mouth, Trevino's response to that question, and any testimony by Strzelecki as to what he observed when he checked Trevino's mouth. A district court judge granted the motion and ordered suppression of the evidence, concluding that

---

[2]*Miranda v. Arizona*, 384 U.S. 486, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A.L.R.3d 974 (1966).

[3]RCW 46.20.308 provides, in part: "Implied consent—Revocation, etc., for refusal to submit to breath or blood alcohol test. (1) Any person who operates a motor vehicle within this state is deemed to have given consent, subject to the provisions of RCW 46.61.506, to a test or tests of his or her breath or blood for the purpose of determining the alcoholic content of his or her breath or blood if arrested for any offense where, at the time of the arrest, the arresting officer has reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while under the influence of intoxicating liquor.

"(2) . . . The officer shall inform the person of his or her right to refuse the breath or blood test, and of his or her right to have additional tests administered by any qualified person of his or her choosing as provided in RCW 46.61.506. The officer shall warn the driver that (a) his or her privilege to drive will be revoked or denied if he or she refuses to submit to the test, and (b) that his or her refusal to take the test may be used in a criminal trial."

[4]"Driving under the influence. (1) A person is guilty of driving while under the influence of intoxicating liquor or any drug if the person drives a vehicle within this state:

"(a) And the person has, within two hours after driving, an alcohol concentration of 0.10 or higher as shown by analysis of the person's breath or blood made under RCW 46.61.506 [.]" RCW 46.61.502.

Trevino had not been properly informed of his right to counsel pursuant to CrRLJ 3.1(c)(1).[5]

The State sought review of the district court's decision in Spokane County Superior Court by writ of certiorari. The superior court affirmed the district court. The State then obtained review of that decision in Division Three of the Court of Appeals. The Court of Appeals concluded that the deputy's inquiry of Trevino as to whether he had anything in his mouth and the checking of Trevino's mouth were both parts of the breath analysis test. Based on that determination, it held that the State's failure to inform Trevino of his right to counsel, pursuant to the provisions of CrRLJ 3.1(c)(1), before conducting any of the steps in the breath test, justified the trial court's suppression of evidence concerning Trevino's response to the deputy's question and the deputy's observations, notwithstanding an absence of prejudice to Trevino. We granted discretionary review of that decision.

## B

### State v. Miesse

Tina Miesse was involved in a one-car accident in Kitsap County on August 8, 1993. At 7:03 P.M., shortly after the accident, a Kitsap County Deputy Sheriff arrived at the scene. Miesse was arrested for driving under the influence at 7:25 P.M. The deputy informed Miesse of her constitutional rights, including her right to counsel, and transported Miesse to Kitsap County Jail. At 8:16 P.M., nearly an hour after Miesse was arrested, the deputy checked Miesse's mouth and asked her if she had anything in it.[6] At 8:18 P.M., the arresting officer again advised Miesse of her constitutional rights. At 8:31 P.M., Miesse

---

[5]Although the court did not order suppression of the breath test results, the State was effectively unable to obtain admission of the results because it could not establish that Trevino's mouth had been free of foreign objects during the fifteen minutes that preceded the taking of the breath samples.

[6]The record does not reveal which occurred first, the inquiry or the visual check.

was given, for the first time, an implied consent warning. The officer told her that:

FURTHER, YOU ARE NOW BEING ASKED TO SUBMIT TO A TEST OF YOUR BREATH WHICH CONSISTS OF TWO SEPARATE SAMPLES OF YOUR BREATH, TAKEN INDEPENDENTLY, TO DETERMINE ALCOHOL CONTENT. YOU ARE NOW ADVISED THAT YOU HAVE THE RIGHT TO REFUSE THIS BREATH TEST; THAT IF YOU REFUSE, YOUR PRIVILEGE TO DRIVE WILL BE REVOKED OR DENIED BY THE DEPARTMENT OF LICENSING; AND THAT YOU HAVE THE RIGHT TO ADDITIONAL TESTS ADMINISTERED BY A QUALIFIED PERSON OF YOUR OWN CHOOSING AND THAT YOUR REFUSAL TO TAKE THE TEST MAY BE USED IN A CRIMINAL TRIAL.

(Clerk's Papers at 128.) Miesse then provided the deputy with two breath samples for analysis by the BAC Verifier DataMaster. The first sample was provided at 8:37 P.M., and the second three minutes later. Both tests revealed that Miesse had a blood alcohol concentration of 0.12. Miesse was charged in Kitsap County District Court with violating RCW 46.61.502.

Miesse moved in district court to suppress the breathalyzer test results. Her motion was denied. We took review of that determination directly from Kitsap County District Court.[7]

II

Analysis

A

*Trevino*

The State asserts on appeal that the Court of Appeals

---

[7]There is no specific provision in the Rules of Appellate Procedure for direct review of district court decisions. This court, noting the similarity of the issues in the *Miesse* appeal to the issues of the *Trevino* appeal, waived the usual procedural rules in order to provide a prompt and ultimate determination of the issues. RAP 1.2(c).

erred in upholding the superior court's order affirming the district court's suppression of the evidence gathered prior to the deputy sheriff advising Trevino, pursuant to CrRLJ 3.1(c)(1), of his right to counsel.[8] The State contends, in that regard, that the Court of Appeals wrongly concluded that Trevino's right to be informed of his right to a lawyer attached before the deputy asked him if he had anything in his mouth and checked his mouth for foreign objects. It contends, alternatively, that even if Trevino's right under the rule to be advised of his right to counsel was violated, the evidence gathered by the deputy should not have been suppressed, absent a showing that Trevino was prejudiced by the rule violation.

1.

In support of its argument that Trevino need not have been informed of his right to a lawyer before the deputy asked him about the contents of his mouth or checked his mouth for foreign objects, the State relies to a large extent on our holding in *Heinemann v. Whitman County*, 105 Wn.2d 796, 718 P.2d 789 (1986). In that case we held that a DUI suspect has no right under JCrR 2.11(c)[9] to be advised of his or her right to counsel prior to the time an arresting officer administers a field sobriety test to the suspect. The *Heinemann* case is not persuasive. That is so because the defendant in that case was not in custody at the time the field sobriety test was conducted. Trevino, on the other hand, was arrested and was in custody before

---

[8]CrRLJ 3.1(c)(1) provides: "When a person has been arrested he or she shall as soon as practicable be advised of the right to a lawyer. Such advice shall be made in words easily understood, and it shall be stated expressly that a person who is unable to pay a lawyer is entitled to have one provided without charge."

[9]JCrR 2.11 is the predecessor to CrR 3.1 and is substantially similar to the present rule. JCrR 2.11(c) provided as follows:

"(1) When a person is taken into custody he shall immediately be advised of his right to counsel. Such advice shall be made in words easily understood, and it shall be stated expressly that a person who is unable to pay a lawyer is entitled to have one provided without charge.

"(2) At the earliest opportunity a person in custody who desires counsel shall be provided access to a telephone, the telephone number of the public defender or official responsible for assigning counsel, and any other means necessary to place him in communication with a lawyer."

the deputy inquired if he had anything in his mouth and checked his mouth for foreign objects.[10] More to the point is *State ex rel. Juckett v. Evergreen Dist. Court*, 100 Wn.2d 824, 675 P.2d 599 (1984), in which we held that when a person suspected of DUI is in custody, police officers must inform the person of his right to counsel before administering the breathalyzer test.[11] *Evergreen*, 100 Wn.2d at 831.

Trevino asks us to affirm the Court of Appeals holding that the breath test commences when the arresting officer either inquires about the contents of the mouth or checks the suspect's mouth. If we were persuaded to do so, it would, of course, follow that the rule was violated, the advice required by CrRLJ 3.1(c)(1) not having been given to Trevino prior to the time those steps were taken.[12] The State, not surprisingly, responds that the observation period and events leading up to the taking of the breath sample are not a part of the breath test.

The Court of Appeals, as we have noted, agreed with Trevino, concluding that the breath test began when the arresting officer inquired if Trevino had anything in his mouth and checked his mouth for foreign objects. Although, for reasons we set forth at greater length in *State v. Miesse*, we believe that inquiring about and checking the mouth are not part of the breath test, a resolution of that question is immaterial to this case. That is so because we are satisfied that Trevino's rights pursuant to CrRLJ

---

[10]The State cites a number of cases from this state and the United States Supreme Court which stand for the proposition that a suspect's Fifth Amendment privilege against self-incrimination is not violated by a statutory scheme that requires a defendant to submit to a breathalyzer examination. These cases are not at all on point since we are dealing here with an alleged violation of a court rule.

[11]Although *Evergreen* employs the term "*Miranda* warnings," the source of the right to counsel in *Evergreen* was JCrR 2.11(c) (now CrRLJ 3.1(c)), not the Fifth Amendment. The results of breathalyzer tests are considered real or physical evidence, not testimonial evidence. The protection against self-incrimination is not, therefore, violated. *State v. Franco*, 96 Wn.2d 816, 828-29, 639 P.2d 1320 (1982).

[12]Trevino also did not receive an implied consent warning until after his mouth had been checked. Unlike Miesse, he has not argued that the evidence should be suppressed on that basis.

3.1(c)(1) were violated, regardless of whether or not checking the mouth and inquiring about the contents of the mouth are deemed to be part of the breath test.

██ Pursuant to CrRLJ 3.1(c)(1), an arresting officer is required to advise an arrested person "*as soon as practicable*" of his right to a lawyer. The rule provides, further, that the right shall accrue "*as soon as feasible after the defendant has been arrested.*" CrRLJ 3.1(b)(1) (emphasis added). Although the terms "as soon as practicable" and "as soon as feasible" are not defined in the rule, the Task Force Comment to Rule 3.1 suggests that this advice must be given "immediately" after the arrest. 4A Lewis H. Orland & Karl B. Tegland, Wash. Prac., *Rules Practice* CrRLJ 3.1 task force cmt., at 780 (4th ed. 1990). We subscribe to that view of when the advice of the right to counsel should be given.

It is readily apparent that the advice that the deputy sheriff was required to give to Trevino, pursuant to CrRLJ 3.1(c)(1), was not given to him immediately after his arrest. As we have observed above, Trevino was taken into custody at 12:24 A.M. He was then transported to the Public Safety Building in downtown Spokane where the preliminary steps such as checking his mouth were completed. At least forty-five minutes expired from the time Trevino was arrested until he was advised by the arresting deputy that he had a right to a lawyer. There is absolutely nothing in the record which sheds any light on why that advice was not given to him during this period of time. Indeed, there is not even the faintest suggestion that it was not practicable or feasible to give Trevino the required advice sooner than it was given. Clearly, the rule was violated.

Although, as we have indicated, it is not necessary for us to decide in this case when the breath test begins, it is difficult for us to conceive of a situation where it would not be practicable or feasible to advise a DUI suspect of his or her right to counsel prior to inquiring about or checking the contents of the suspect's mouth. Ordinarily, these steps would have followed observations in the field,

and the administration of a field sobriety test. Those preliminary steps would necessarily take a considerable amount of time, affording the arresting officer ample opportunity to advise the suspect of his right to a lawyer. To be sure, under these facts, the advisement of Trevino was not given "as soon as practicable" or "as soon as feasible" after arrest.

2.

The State contends that even if CrRLJ 3.1(c)(1) was violated, suppression is not required here because there was no prejudice to Trevino. Trevino asserts that suppression is dictated by our holding in *Evergreen*. In that case, one of the three defendants, Marquez, was not advised of his right to counsel by the arresting officer until after he submitted a breath sample. Trevino correctly observes that the trial court suppressed the results of the breath test administered to Marquez and we affirmed that decision. That case is, however, very different from the instant case. The defendant in *Evergreen* was not advised of his right to counsel until after the breath sample had been taken, whereas, when Trevino was advised of his right to an attorney he had not yet submitted a breath sample.

We believe the case of *State v. Schulze*, 116 Wn.2d 154, 804 P.2d 566 (1991) is more apt. There we held that suppression of evidence was only appropriate for rule violations where "the evidence to be suppressed has been tainted by the violation."[13] *Schulze*, 116 Wn.2d at 162. Viewing the facts of this case in light of *Schulze*, we are satisfied the violation of CrRLJ 3.1(c)(1) did not taint the evidence obtained by the deputy. Trevino, as the record reveals, was advised of his right to speak to an attorney well in advance of giving a breath sample. Significantly,

---

[13]In *Schulze*, the defendant was arrested for vehicular homicide. He argued that a blood sample taken from him before he was permitted to contact an attorney should be suppressed. We concluded that the results of the testing of the blood sample should not have been suppressed because even if he had contacted an attorney, he could not have done anything other than to instruct him to submit to the test. *See* RCW 46.20.308(3) (a defendant arrested for vehicular homicide cannot withhold consent to a requested blood test).

he actually spoke to an attorney before he furnished the officer with a sample of his breath. Consequently, Trevino obtained the benefit of the rule, which is clearly designed to ensure that arrested persons are aware that they have the right to the assistance of counsel before they provide evidence which might tend to incriminate them. Suppression, of course, remains appropriate in cases where there has been a taint of the evidence. In *Evergreen*, for example, where the suspect was not advised of his right to counsel until after a breath sample had been taken from him, suppression was appropriate.

## B

### *Miesse*

Miesse contends that the trial court erred in not suppressing the results of her breath test. As noted above, Miesse was advised of her right to counsel at the scene of her arrest. She was not, however, given her implied consent warning until after her mouth was checked by the arresting officer, albeit at a point prior to the time she actually submitted a sample of her breath for analysis. Miesse, like Trevino, asserts that the breath test began when the deputy took the steps of inquiring about and checking her mouth. She goes on to reason that, because the implied consent warning was not given to her before the deputy took those steps, the results of the breath test should have been suppressed.

Anyone arrested for driving a motor vehicle under the influence of intoxicating liquor is deemed to have consented to a test of his or her breath to determine its alcoholic content. RCW 46.20.308(1). A driver can refuse to submit to a breath test; however, such a refusal will result in the revocation or denial of his or her driving privilege for one year. RCW 46.20.308(2). Before conducting a breath test, however, law enforcement officers are required to give suspected DUI offenders a warning like that given to Miesse. *Gonzales v. Department of Licensing*, 112 Wn.2d 890, 895, 774 P.2d 1187 (1989); RCW

46.20.308(2). The purpose of such a warning is to give the accused the right to make a knowing and intelligent decision whether or not to submit to a breath test. *Gonzales*, 112 Wn.2d at 897. Failure to give a proper implied consent warning will result in the suppression of the results of the breathalyzer test. *State v. Whitman County Dist. Court*, 105 Wn.2d 278, 287, 714 P.2d 1183 (1986).

In light of the clear requirement that an implied consent warning must be given before the breath test, it is necessary for us to decide in this case when the breath test actually begins. As we discussed above, the Court of Appeals concluded in *Trevino* that the breath test begins when an arresting officer either inquires about the contents of or visually checks the suspect's mouth. In reaching that determination, that court emphasized that the breathalyzer test "must be performed 'according to methods approved by the state toxicologist . . .'. RCW 46.61.506(3)." *State v. Trevino*, 74 Wn. App. 496, 501, 873 P.2d 1214 (1994). Significantly, the court said: "Those methods, set out in WAC 448-13-040, include the requirement that the suspect's mouth be checked for foreign objects before a mandatory 15-minute observation period. The mouth check and observation period are therefore integral steps in the BAC Verifier DataMaster test procedure." *Trevino*, 74 Wn. App. at 501.

We believe that WAC 448-13-040 is more ambiguous on the question of when the breath test begins. Although the rule indicates that the "method for performing a breath test . . . *includes*" the preliminary steps of inquiring about and checking a suspect's mouth, it goes on to state that those same preliminary steps are to be performed "*prior to the test being performed.*" WAC 448-13-040 (emphasis added).

If the test includes the safeguards, then the test in this case began when the deputy checked Miesse's mouth. If, however, the safeguards are merely preliminary to the test, then the test did not commence until the actual taking of the breath sample.

■ As noted, the purpose of the implied consent warning is to allow a suspected DUI offender to make a knowing and intelligent decision about whether to submit to a breath test. We believe that purpose is served as long as the warning is given sufficiently in advance of the time the suspected offender is asked to provide a breath sample so that the suspect can make a knowing and intelligent decision as to what is the best course of action for him or her. The sequence of the steps in the test is less important, in our opinion, than the fact that the suspect has an opportunity to reflect on the warning prior to making the irrevocable decision to submit or not submit the breath sample.[14] Importantly, the decision to refuse to submit to a breath test can still be made until the time that the actual breath sample is given. Any time, therefore, that the implied consent warning is given to the suspect sufficiently in advance of the request for a breath sample so that the suspect can knowingly and intelligently decide whether to submit to the test, the requirement that the warning precede the test is not violated.

In holding that checking the mouth was part of the test, the Court of Appeals in *Trevino* concluded that a refusal to open the mouth for inspection would be tantamount to a refusal to submit to a breath test and, therefore, it must be part of the test. We disagree. We fail to see how a suspect could be deemed to have refused to submit to a breath test prior to the time he or she had received the required implied consent warning. Only after a proper warning has been given, followed by the suspect's refusal to have his or her mouth inspected, can it be said that there is a refusal to submit to a breath test.

■ Here, Miesse was given the warning at least six minutes before she submitted her breath sample. In our judgment, that was sufficient time to allow her to reflect

---

[14]The initial decision to refuse to submit to a breath test is final and subsequent consent will not change the legal consequences of the initial refusal. *See Department of Licensing v. Lax*, 125 Wn.2d 818, 888 P.2d 1190 (1995).

upon the ramifications of the decision she was called upon to make.

## III

### CONCLUSION

No prejudice having flowed from the violation of CrRLJ 3.1(c)(1), the evidence regarding the contents of Trevino's mouth should not have been suppressed. The Court of Appeals is, therefore, reversed and Trevino's case is remanded to the Spokane County District Court for trial.

Because Miesse was given the implied consent warning sufficiently in advance of being asked to submit a breath sample so that she could reflect on whether or not to submit the sample, the district court properly denied her motion to suppress. That court is, therefore, affirmed.

DURHAM, C.J., DOLLIVER, SMITH, GUY, JOHNSON, MADSEN, and TALMADGE, JJ., and UTTER, J. Pro Tem., concur.