[No. 26822-1-II.    Division Two.    August 30, 2002.]

JAMES W. BALL, *Respondent*, v. THE DEPARTMENT OF LICENSING, *Petitioner*.

194

*Christine O. Gregoire, Attorney General,* and *Lynette J. Weatherby-Teague, Assistant,* for petitioner.

*Owen S. Limstrom* (of *Law Office of Owen S. Limstrom*), for respondent.

ARMSTRONG, J. — Police arrested James Ball for driving while intoxicated and took him to jail. Ball offered unresponsive and unclear answers when asked if he wanted to speak to an attorney. And he failed to follow instructions when taking a breath test. The Department of Licensing revoked Ball's driving privilege. Ball successfully appealed to the superior court, which concluded that Ball was denied a reasonable opportunity to contact counsel and did not refuse to take the breath test. We accepted the State's petition for discretionary review and now reverse.

## FACTS

Police officer Ron Sasaki arrested James Ball for driving while intoxicated in January 2000. Sasaki read Ball his *Miranda*[1] rights and took him to jail. There, Sasaki asked Ball to sign a form acknowledging that he understood his rights. Ball refused and said, "I think I'd like my attorney." AR (Jan. 27, 2000 Orting Police Report) at 3. Sasaki asked Ball if he had an attorney. Without answering the question, Ball asked, "Where are we going?" AR (Jan. 27, 2000 Orting Police Report) at 3. Sasaki explained the breath test process and again asked Ball if he had an attorney. Ball replied, "I hope I don't need him." AR (Jan. 27, 2000 Orting Police Report) at 3. Sasaki asked Ball if he wanted to speak to an

---

[1] *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

attorney and asked for a "yes" or "no" answer. Ball said, "I have an attorney." AR (Jan. 27, 2000 Orting Police Report) at 3. Sasaki concluded that Ball did not want to speak to an attorney.

Officer Sasaki then read Ball his rights under the implied consent law, as stated in RCW 46.20.308(2), that a driver has the right to refuse to submit to a breath test, subject to revocation of his privilege to drive. Ball indicated that he did not understand. Sasaki read the implied consent warnings again, and Ball repeated that he did not understand. Ball pointed to the RCW citations in the statement and wanted to know what they meant. Sasaki explained that they were state laws, and Ball wanted to see them. Sasaki refused and asked if Ball would like to speak to his attorney to help him understand his rights. Ball replied, "I have a RCW I'd like to speak to." AR (Jan. 27, 2000 Orting Police Report) at 4. Sasaki again asked if Ball understood his rights, and Ball said, "I know what it says. We all know what it says. I don't think I'm under the influence." AR (Jan. 27, 2000 Orting Police Report) at 4. Sasaki concluded that Ball understood his rights.

Officer Sasaki then asked Ball if he would submit to a breath test. He said, "I'd rather not, why?" AR (Jan. 27, 2000 Orting Police Report) at 4. Sasaki explained the process to Ball and again asked if Ball would take the test. Ball again asked why he needed to take the test. Sasaki said that he was going to consider Ball's response a refusal to take the test. Ball said that he was not refusing, so Sasaki began the test. Sasaki explained that if Ball wanted to take the breath test, he could not put anything in his mouth, including water, during the 15-minute observation period or his actions would constitute a refusal to take the test. Ball drank from a drinking fountain four times. Sasaki ended the test and recorded Ball's refusal to comply.

The Department of Licensing revoked Ball's driving privilege. He contested the revocation. The administrative hearing officer upheld the revocation based on Ball's refusal to cooperate with the breath test and determined that Ball

had several opportunities to contact an attorney. Ball appealed to Pierce County Superior Court, which reversed the revocation. The trial court concluded that Officer Sasaki denied Ball a reasonable opportunity to contact counsel and that Ball did not refuse to take the breath test. We granted the State's petition for discretionary review.

## ANALYSIS

■ The State challenges the superior court's conclusion that Ball did not refuse to take the breath test. This is a legal conclusion, which we review de novo. *See To-Ro Trade Shows v. Collins*, 144 Wn.2d 403, 410, 27 P.3d 1149 (2001), *cert. denied*, 535 U.S. 931 (2002).

■ A license revocation proceeding is a civil administrative proceeding and is separate from a criminal prosecution for driving while intoxicated. *Gonzales v. Dep't of Licensing*, 112 Wn.2d 890, 900, 774 P.2d 1187 (1989). A driver arrested for driving while intoxicated must be given the *Miranda* warnings, which inform the arrestee of his right to counsel prior to police interrogation. *State v. Staeheli*, 102 Wn.2d 305, 309, 685 P.2d 591 (1984). But a person has no right to counsel in a license revocation proceeding or action. *Keefe v. Dep't of Licensing*, 46 Wn. App. 627, 632, 731 P.2d 1161 (1987); *Haas v. Dep't of Licensing*, 31 Wn. App. 334, 337-38, 641 P.2d 717 (1982); *Wolf v. Dep't of Motor Vehicles*, 27 Wn. App. 214, 221-22, 616 P.2d 688 (1980). Thus, for license revocation purposes, a driver need not receive counsel nor be advised or reminded of his right to counsel before deciding whether to take a breath test. *Gonzales*, 112 Wn.2d at 900.

In reversing Ball's license revocation, the superior court relied on our opinion in *Johnson v. Dep't of Licensing*, 71 Wn. App. 326, 858 P.2d 1112 (1993). The parties dispute the meaning of one paragraph in that opinion:

A driver arrested for driving while intoxicated must be advised of his *Miranda* rights so that he can intelligently respond to a police interrogation request and understand his constitutional

and court rule rights of access to counsel. *State v. Staeheli*, 102 Wn.2d 305, 309, 685 P.2d 591 (1984); CrRLJ 3.1. After the police advise a defendant of his rights, *"[i]f the defendant requests the assistance of counsel*, access to counsel must be provided before administering the test." (Italics ours.) *State ex rel. Juckett v. Evergreen Dist. Court*, 100 Wn.2d 824, 831, 675 P.2d 599 (1984).

*Johnson*, 71 Wn. App. at 331-32. Ball interprets *Johnson* as holding that the constitutional and court rule rights of access to counsel apply in a civil proceeding under the implied consent statute. He is incorrect. We did not intend, in *Johnson*, to alter the long-standing rule that there is no right to counsel in an implied consent proceeding. *See Keefe*, 46 Wn. App. at 632; *Haas*, 31 Wn. App. at 337-38; *Wolf*, 27 Wn. App. at 221-22. Furthermore, our statement in *Johnson* was dicta, as the issue there was whether the record supported a finding that the accused did not ask for an attorney until he was jailed after refusing to take a breath test. *Johnson*, 71 Wn. App. at 332.

■■ Here, we need decide only whether Ball refused to take the breath test. Absent evidence of impossibility, unwillingness to cooperate with the administration of a breath test constitutes a refusal. *Woolman v. Dep't of Motor Vehicles*, 15 Wn. App. 115, 117, 547 P.2d 293 (1976). This is true even if the driver is too intoxicated to comprehend and respond to an officer's request that he submit to the test. *Dep't of Motor Vehicles v. McElwain*, 80 Wn.2d 624, 627-28, 496 P.2d 963 (1972). Ball repeatedly drank from a drinking fountain, ignoring the officer's order that he not put anything in his mouth, including water. We conclude that Ball refused to take the breath test, and the Department of Licensing properly revoked his driving privilege.

We reverse the superior court's order and remand for revocation of Ball's driving privilege.

HUNT, C.J., and BRIDGEWATER, J., concur.