[No. 21573-3-III. Division Three. February 5, 2004.]

MICHAEL SHAWN LEININGER, *Respondent*, v. THE DEPARTMENT OF LICENSING, *Appellant*.

*Christine O. Gregoire, Attorney General,* and *Janelle M. Carman, Assistant,* for appellant.

*Alan M. Singer,* for respondent.

SWEENEY, J. — A driver arrested for driving while under the influence has no right to an attorney for the implied consent proceedings. Police may be required to clarify any "objective and unequivocal" confusion over the consequences of a refusal to take a breath test. Here, Michael Leininger, after being arrested for driving while under the influence, did not express confusion over the specific implied consent warnings, but rather over what he should do. Police provided him with a phone book and permitted him to call his wife. She gave him the name and telephone number of his attorney. Despite this, he failed to provide a breath sample. The "confusion" expressed by Mr. Leininger is not the type which the officer is required to dispel. We therefore reverse the decision of the trial court. It would have required that the officer provide Mr. Leininger with a list of "after hours" attorneys.

## FACTS

Police arrested Michael Leininger for driving under the influence. They took him to jail, booked him, and then read him his *Miranda*[1] rights. He acknowledged those rights and declined to waive them. He then repeatedly asked to speak with an attorney and specifically attorney Michael Pickett. He called his wife to get Mr. Pickett's telephone number. He asked the officer what he should do. The officer said he could not give legal advice and that he had been given a way to contact an attorney.

Mr. Leininger told the officer that he wanted to proceed with the breath test without speaking to counsel. The

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

officer gave implied consent warnings.[2] Mr. Leininger understood and acknowledged as much in writing.

Mr. Leininger again said he wanted to speak to an attorney. He called the number provided for Mr. Pickett, but got the attorney's voice mail. He told the officer that he "did not understand what DOL [Department of Licensing] would do to his license." Clerk's Papers (CP) at 63 (finding of fact 19). The officer again read the implied consent warnings. And Mr. Leininger again asked for advice. The officer refused to give advice and again provided a telephone and phone book. Mr. Leininger declined to use the telephone and stated that he would take the test.

The officer checked Mr. Leininger's mouth, conducted the observation period, and entered data into the breath test machine. When it was time for the breath sample, Mr. Leininger asked, "what's DOL gonna do to my license?" CP at 64 (finding of fact 25). The officer gave him the printed implied consent warnings. He read them himself. Meanwhile, when the breath machine was ready, the officer asked him if he would "get up and give a sample." CP at 64 (finding of fact 26). Mr. Leininger did not speak. He stared at the officer. The officer asked repeatedly if he would give a sample. The machine cycled to indicate that there was an incomplete test. The officer handed Mr. Leininger off to jail staff for processing and entered a refusal to take the test on the appropriate form.

Mr. Leininger contested the revocation of his license. He testified that he understood he was entitled to speak to an attorney. And he wanted one. He asked the officer to allow him to speak to one. He gave the name of Mr. Pickett when he "couldn't get an answer from the officer as to who I might

---

[2] He had the right to refuse the test and to have additional tests administered by a qualified person of the driver's choice; that the driver's "license, permit, or privilege to drive will be revoked or denied if he or she refuses to submit to the test"; that the driver's "license, permit, or privilege to drive will be suspended, revoked, or denied if the test is administered and indicates an alcohol concentration of . . . 0.08 or more, in the case of a person age twenty-one or over, or in violation of RCW 46.61.502, 46.61.503, or 46.61.504 in the case of a person under age twenty-one"; and "refusal to take the test may be used in a criminal trial." RCW 46.20.308(2).

speak to." CP at 48. He asked the officer whom he could contact at 3:00 A.M. for legal advice. The officer responded with a telephone book and said that that was all he was required to do.

Later Mr. Leininger learned that the Benton County jail had a list of "after hours" attorneys with phone numbers.

The Department of Licensing revoked Mr. Leininger's driver's license. The hearing officer sustained the revocation. She concluded he failed to support a "confusion" defense and was not denied access to counsel.

Mr. Leininger appealed to the superior court. The superior court judge reversed the hearing examiner's order and reinstated Mr. Leininger's driving privileges, concluding that the refusal to provide the list of available attorneys supported a "confusion defense."

The department appealed to this court. And we accepted review.

## DISCUSSION

Our review here is limited to whether the administrative hearing officer committed errors of law. RCW 46.20.308(9); RALJ 9.1(a). We accept factual determinations supported by substantial evidence, and their reasonable inferences. RCW 46.20.308(9); RALJ 9.1(b). Mr. Leininger does not challenge the factual findings. And so we review the legal conclusions de novo. *See Ball v. Dep't of Licensing*, 113 Wn. App. 193, 197, 53 P.3d 58 (2002).

■■■ A Washington driver consents to a chemical test to determine the alcohol content of his blood, subject to the opportunity to withdraw consent. RCW 46.20.308(1). Refusal to take the breath test results in a revocation of a driver's license. RCW 46.20.308(2), .3101(1). But, "a license cannot be revoked unless the driver has been asked to submit to the test and refuses." *State v. Staeheli*, 102 Wn.2d 305, 308, 685 P.2d 591 (1984). This generally requires that the driver be advised of his rights under the implied consent law and then decline to take a breath test. But if

the driver "objectively and unequivocally" shows confusion over the warnings of "the consequences of refusal and was denied clarification," the consequences of his refusal may be vitiated. *Strand v. Dep't of Motor Vehicles*, 8 Wn. App. 877, 878, 509 P.2d 999 (1973); *Medcalf v. Dep't of Licensing*, 83 Wn. App. 8, 21, 920 P.2d 228 (1996), *aff'd*, 133 Wn.2d 290, 944 P.2d 1014 (1997). But unwillingness to cooperate is still a refusal. *Ball*, 113 Wn. App. at 198.

The legal conclusion we review here is that Mr. Leininger refused to take the test. He responds that he was confused about his rights. And the officer refused to clarify.

But Mr. Leininger does not claim that the language of the warning itself was confusing. He claims rather that he was entitled to the advice of an attorney based on the reading of constitutional rights which preceded the implied consent warnings. And only an attorney could have clarified his legal predicament and the consequences thereof.

The following rule has been described as "long-standing" here in Washington: "[T]here is no right to counsel in an implied consent proceeding." *Ball*, 113 Wn. App. at 198. And that rule answers Mr. Leininger's challenge. The confusion expressed by Mr. Leininger is comparable to the confusion expressed by Mr. Vance in *Vance v. Department of Licensing*:

> "Mr. Vance did not express confusion with respect to the meaning of the implied consent warning for breath. Rather, Mr. Vance's only apparent confusion was whether he should or should not take the test. This is not confusion that the officer is required to clarify."

116 Wn. App. 412, 418, 65 P.3d 668 (quoting Conclusion of Law 5, Hr'g Examiner's Decision (Mar. 6, 2001)), *review denied*, 150 Wn.2d 1004 (2003). The officer gave Mr. Leininger the opportunity to call an attorney. That is all the officer is required to do. Even if the officer were required to provide the list of after-hours attorneys, there is nothing in this record which would support a finding that the officer knew of this list. Would it be a good practice for arresting

74

officers to provide an after-hours list of attorneys given the potential criminal ramifications from breath test results and the implied consent? Probably. But there is no legal obligation for the officer to do so. *Ball*, 113 Wn. App. at 198.

We therefore reverse the decision of the trial judge that imposed upon the arresting officer the obligation to facilitate Mr. Leininger's communication with an attorney prior to administration of the breath test here. There is no such obligation.

KATO, A.C.J., and KURTZ, J., concur.