[No. 63319-3. En Banc.]
Argued May 30, 1996.    Decided September 19, 1996.

THE STATE OF WASHINGTON, *Respondent*, v. RODGER SMITH, *Petitioner*.

*Brian C. O'Brien*, for petitioner.

*James R. Sweetser, Prosecuting Attorney*, and *Stefanie Walter, Deputy*, for respondent.

TALMADGE, J. — Rodger Smith almost ran into a state trooper head-on. The trooper detained him and he failed

field sobriety tests given at the scene. The trooper then administered, with Smith's consent, a portable breath test (PBT), not approved by the state toxicologist. The trooper did not preserve any evidence of the PBT result. Smith was arrested for driving under the influence of alcohol or drugs (DUI), given his implied consent statutory warnings, and subsequently tested 0.12 for blood alcohol on the BAC Verifier DataMaster breathalyzer at Spokane's Public Safety Building.

Smith was convicted of DUI by a jury in Spokane County District Court. On appeal, he contends the DataMaster result is inadmissible as the "fruit of a poisonous tree," the inadmissible PBT result. Moreover, he argues he was denied due process because the PBT result was not preserved, thereby denying him the opportunity to cross-examine the trooper on the PBT result. We affirm the Court of Appeals and uphold Smith's DUI conviction.

## ISSUES

1. Did the trial court err in denying Smith's motion to suppress the DataMaster results?

2. Did the trial court err in precluding defense counsel from questioning Trooper Wiley about the PBT?

## FACTS

On August 11, 1991, Trooper Richard A. Wiley was alone in his patrol car about 1:00 a.m. He was heading southbound on Monroe Road in Spokane when he observed a vehicle coming toward him veer over the center line into his lane. Trooper Wiley had to jerk his car to the right to avoid a collision. Trooper Wiley then made a U-turn and gave chase. The driver, Rodger Smith, stopped at a gas station. When Trooper Wiley approached Smith, he first noticed a "strong odor of intoxicants" on Smith's breath. Clerk's Papers at 105. When Smith began looking for his license, registration, and proof of insurance,

Trooper Wiley noticed "poor finger dexterity." Clerk's Papers at 105. He asked Smith if he would be willing to perform some sobriety tests. Smith agreed. When Smith exited his car, Trooper Wiley again noticed a strong odor of intoxicants and Smith's eyes were bloodshot and watery.

Trooper Wiley had Smith perform various field sobriety tests. Smith failed these tests, which included reciting the alphabet from *a* to *z*, walking a straight line, and standing on one leg with his arms at his sides while counting to 30 as fast as possible. Trooper Wiley concluded Smith was impaired.

Trooper Wiley then asked Smith to consent to a PBT, advising him the results were inadmissible in court. Smith consented to the test and Trooper Wiley administered it. Trooper Wiley obtained only a digital read-out on the PBT device. He preserved no written record of the result. Smith remembers seeing the result, but recalls only that an "8" was displayed. Trooper Wiley did not recall the PBT result at trial.

The trooper arrested Smith for DUI and transported him to the Public Safety Building. At the Public Safety Building, in answer to Trooper Wiley's questions, Smith admitted he had been drinking bourbon in two different locations. The trooper advised Smith of his rights regarding the breathalyzer pursuant to the implied consent statute, RCW 46.20.308, and then administered a BAC Verifier DataMaster test to Smith, obtaining a reading of 0.12 grams of alcohol per 210 liters of breath.

Prior to his jury trial in the Spokane County District Court, Smith moved to suppress the results of the Data-Master test, claiming the PBT was an illegal search in violation of the implied consent law. The motion was denied.

At trial, Smith admitted to having three bourbon and Cokes and sips from a fourth at two different locations in Spokane and Coeur d'Alene over a period of approximately six hours. He had begun his evening's entertainment after working a 12-hour day shift from 6:00 a.m. to 5:30 p.m. for

the Spokane Fire Department. He testified he ate dinner after getting off work, and arrived at the Hedgehouse Tavern at about 7:15 p.m. He was there one hour before leaving for Coeur d'Alene. He testified to having one bourbon and Coke and one 7-Up or coffee while he was at the Hedgehouse. He testified the drinks were 8 ounces, but did not know how many ounces of alcohol each contained. He testified, "I order them in a tub." Clerk's Papers at 163-64. He testified he considered himself to be a medium drinker.

Fire Lieutenant Dave West, Smith's companion that evening, testified on Smith's behalf. At the time of his testimony, West was president of the Firefighters Union. He had known Smith for 17 to 18 years. West testified he picked Smith up at the Hedgehouse between 8:00 and 8:30 p.m., and drove him and West's friend, Karen, to the Holiday Inn in Coeur d'Alene, arriving before 9:00 p.m. He said he himself had two to three drinks at the Holiday Inn, and that Smith's consumption "wouldn't have been a lot different than mine." Clerk's Papers at 182.

The jury found Smith guilty of driving while intoxicated. Smith was not sentenced, as he appealed before a sentencing hearing could occur. The court denied Smith's motion for a new trial; Smith then filed a notice of appeal to Superior Court.

The Spokane County Superior Court issued a written opinion reversing the conviction and ordering a retrial because the district court prevented Smith from cross-examining the trooper on the PBT and the trooper gave an opinion on Smith's intoxication, an ultimate issue to be decided by the jury.[1]

The State then moved for discretionary review to the Court of Appeals, assigning error to both conclusions of the superior court, and Smith cross-appealed, assigning error to the trial court's failure to suppress the results of the DataMaster test, the trial court's ruling the PBT test

---

[1]Smith raised the issue of Wiley's testimony on his intoxication in the Court of Appeals, but Smith did not raise it in this Court and we do not address the issue. RAP 13.7(b).

was inadmissible, the trial court's refusal to suppress the other roadside sobriety tests, and the trial court's failure to grant his motion for a new trial. In *State v. Lewellyn*, 78 Wn. App. 788, 895 P.2d 418 (1995),[2] the Court of Appeals reversed the superior court, allowing Smith's conviction in district court to stand. The court held both that the DataMaster test result was admissible, and the failure to preserve the result of the PBT did not deprive Smith of due process. *Id.* at 796-98. Smith petitioned for review, which we granted.

## ANALYSIS

A. The Portable Breath Test

The present case is prompted largely by the decision of Trooper Wiley to use the PBT, a device counsel for the State referred to in oral argument as "experimental." RCW 46.61.506(3) provides breath test results are valid only if administered in accordance with procedures adopted by the state toxicologist. That official has not approved the PBT for measuring alcohol in a person's breath. WAC 448-13-020 (Supp. 1996) ("DataMaster is the only breath test instrument approved by the state toxicologist").

■■ Moreover, no hearing occurred on the scientific validity of portable breath testing equipment generally or on the particular equipment used in this case pursuant to *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). *State v. Cauthron*, 120 Wn.2d 879, 886, 846 P.2d 502 (1993), reaffirmed the continued viability of the *Frye* test in Washington: "[E]vidence deriving from a scientific theory or principle is admissible only if that theory or principle has achieved general acceptance in the relevant scientific community." *Frye*, 293 F. at 1014.

---

[2]Smith's case was consolidated in the Court of Appeals with that of Gary Lewellyn, and the Court of Appeals' decision was published under Lewellyn's name. Lewellyn did not petition for review, and his case was mandated in July 1995.

Smith poses the trenchant rhetorical question: "Are we to assume that the State is buying garbage?" Br. of Resp't at 27. Nevertheless, in the absence of a *Frye* hearing on the PBT, or specific approval of the device and its administration by the state toxicologist, the result garnered from the PBT is inadmissible for any purpose, and the State employs such unapproved devices at its peril if it attempts to use the evidence they generate to establish probable cause. Here, there was ample evidence of Smith's intoxication to establish probable cause without the PBT.

B. Motion to Suppress

Smith contends the trial court should have granted his pretrial motion to suppress the result of the DataMaster test, which indicated Smith had an alcohol/breath ratio of 0.12 grams of alcohol per 210 liters of breath, because the PBT he took was an illegal, warrantless search administered in violation of the implied consent statute.[3] Smith asserts the test was illegal because Trooper Wiley did not inform him of his right to refuse the test. As a result of the illegal PBT, Smith argues, the subsequent DataMaster test was improper, even though Trooper Wiley did warn him in accordance with the implied consent statute before he took it, because he was unable to make a knowing and intelligent decision as to whether to take the test. Smith bases his argument on the notion that the accused's decision to take the formal DataMaster test can be affected by the result obtained in the earlier informal PBT. Smith also asserts, without citation to authority, the DataMaster test should have been suppressed because it was the fruit of an illegal search. We reject Smith's arguments.

Smith maintains the administration of the PBT was

---

[3]RCW 46.20.308(2) provides, in pertinent part: "The officer shall inform the person of his or her right to refuse the breath or blood test, and of his or her right to have additional tests administered by any qualified person of his or her choosing as provided in RCW 46.61.506."

illegal because Trooper Wiley did not tell him he did not have to take the test. In fact, Trooper Wiley made out a certificate in which he averred "I informed the defendant as I always do that the PBT could not be used in court and was purely voluntary." Clerk's Papers at 18-19. At the pretrial hearing, Trooper Wiley testified, when asked what he told Smith about taking the PBT, "I told him it was nominative [sic], breath tests weren't required by law that is was strictly voluntary and could not be used against him in a court of law." Clerk's Papers at 83. Despite Smith's testimony to the contrary, the trial court found Smith had taken the PBT voluntarily after having been told he did not have to do so, a finding from which Smith has not appealed. This finding is a verity on appeal. *State v. Hendrickson*, 129 Wn.2d 61, 72, 917 P.2d 563 (1996). Moreover, Smith offers no evidence his decision to take the DataMaster test was in any fashion affected by the earlier PBT result. Thus, it does not appear Trooper Wiley somehow deceived Smith into taking the PBT in order to trick him into consenting later to take the DataMaster test.[4]

■ ■ Nor was the administration of the PBT unconstitutional. Because the performance of a field sobriety test is nontestimonial in nature, no Fifth Amendment protections attach. *Heineman v. Whitman County Dist. Court*, 105 Wn.2d 796, 801, 718 P.2d 789 (1986). Neither does WASH. CONST. art. I, § 9, provide greater protection. *Id.*

■ In oral argument, counsel for the State suggested Trooper Wiley may have used the PBT result to decide whether he had probable cause to arrest Smith for DUI. Even if the PBT result had been improperly utilized to decide probable cause, the DataMaster results were not the fruit of the poisonous tree. Apart from the PBT result,

---

[4]The requirements of the implied consent statute may not come into play here. RCW 46.20.308 says a person is deemed to have consented to a breath or blood test for alcohol "if arrested." The statute does not speak to situations in which no arrest has occurred. Trooper Wiley asked Smith to take the PBT *before* he arrested him.

there was ample evidence from the totality of the circumstances prior to the PBT result to support probable cause to arrest. Smith's car had nearly struck Trooper Wiley's vehicle head-on. Wiley also observed the smell of alcohol on Smith's breath, his lack of finger dexterity, and his failing several field sobriety tests. *See, e.g., State v. Staeheli*, 102 Wn.2d 305, 306, 685 P.2d 591 (1984) (probable cause for arrest established when officer found petitioner asleep in car with lights on and engine running, with vehicle faced the wrong way in a weigh station); *Bokor v. Department of Licensing*, 74 Wn. App. 523, 525, 874 P.2d 168 (1994) (probable cause for arrest established by strong odor of intoxicants and respondent's inability to perform field sobriety tests successfully); *O'Neill v. Department of Licensing*, 62 Wn. App. 112, 117, 813 P.2d 166 (1991) (probable cause for arrest established by strong odor of alcoholic beverage, watery, bloodshot eyes, and slurred speech); *Williams v. Department of Licensing*, 46 Wn. App. 453, 455-56, 731 P.2d 531 (1986) (reasonable grounds for arrest established by police observation of erratic driving, appellant's red and watery eyes, and odor of alcohol). The Data-Master test was not a "direct result of a compelled incriminating statement," and was therefore not a "fruit of a poisonous tree." *State v. Warner*, 125 Wn.2d 876, 888, 889 P.2d 479 (1995).

Because the PBT was neither unconstitutional nor illegal, the resulting DataMaster test was not inadmissible. The district court did not err in denying Smith's motion to suppress the evidence from the DataMaster test.

C. Due Process

The district court ruled evidence of the administration and result of the PBT was inadmissible; the court also prohibited cross examination of Trooper Wiley concerning the PBT. The court said the PBT was not scientifically reliable enough to allow its admission for the State and would not allow the defendant to talk about it because the only possible exculpatory evidence from the PBT would

have been too speculative, given that Trooper Wiley did not remember the reading and did not make a written record of it.

■■ Smith invokes the *Brady/ Wittenbarger* rule and argues the State deprived him of due process in failing to preserve the PBT results: "To comport with due process, the prosecution has a duty to disclose material exculpatory evidence to the defense and a related duty to preserve such evidence for use by the defense." *State v. Wittenbarger*, 124 Wn.2d 467, 475, 880 P.2d 517 (1994) (citing *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963)). But:

> A showing that the evidence might have exonerated the defendant is not enough. In order to be considered "material exculpatory evidence," the evidence must both possess an exculpatory value that was apparent before it was destroyed and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

*Wittenbarger*, 124 Wn.2d at 475 (citing *California v. Trombetta*, 467 U.S. 479, 489, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984)). Likewise, in *State v. Copeland*, 130 Wn.2d 244, 922 P.2d 1304 (1996), we held the failure of the State to preserve certain DNA materials for testing did not violate *Brady/ Wittenbarger*. We drew a careful distinction there between *potentially useful* evidence and *material exculpatory* evidence. In the absence of police bad faith, there is no denial of due process in failing to preserve the former.

Smith fails to demonstrate the result of the PBT met the *Brady/ Wittenbarger* test. First, Smith makes no argument of bad faith conduct by the Washington State Patrol in failing to preserve the PBT result. Even if the evidence was potentially useful to him, the failure to preserve it was not a violation of due process.

■ Second, the PBT result was not material. The PBT result was not admissible, as previously noted, and Smith did not make an offer of proof as to the reliability of the

PBT. Even if the reading were indeed an exculpatory 0.08, and the evidence had been preserved, in order to get that evidence admitted, Smith would have had to show the PBT methodology was acceptable under the *Frye/ Cauthron* test. Smith did not preserve the issue for appeal by making an offer of proof of the PBT evidence he sought to admit as required by ER 103(a)(2).[5] Without an offer of proof tending to establish the admissibility of the missing PBT evidence, Smith did not preserve his right to appeal from the ruling the evidence was inadmissible. *State v. Riker*, 123 Wn.2d 351, 369-70, 869 P.2d 43 (1994).

Third, it is not at all clear the evidence from the PBT would have been exculpatory. Smith himself remembered Trooper Wiley showed him the results of the PBT only "real briefly," and all he remembers "is something about an 8 being on there." Clerk's Papers at 81. In the face of Trooper Wiley's testimony about Smith's appearance and field sobriety test failures, combined with the 0.12 Data-Master reading, it is difficult to conclude the unpreserved PBT reading would have provided "material exculpatory evidence."

Finally, Smith had other means of getting breath results reasonably available to him. Under RCW 46.20.308(2), he had a right to other breath tests. Smith was aware of this right, having signed a card from which Trooper Wiley read the statutory warnings. He declined, however, to avail himself of this right. Thus, Smith was not deprived of due process when the trial court ruled evidence of the PBT result inadmissible.

██ ██ Smith also argues the trial court deprived him of due process when it would not allow him to argue Trooper Wiley's memory was at issue when he could remember the details of Smith's appearance and field

---

[5]"Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . [i]n case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked."

sobriety tests, but could not remember the PBT reading. Smith is correct. The district court abused its discretion in ruling Trooper Wiley could not be cross-examined on his recollection of the PBT result for the limited purpose of testing his recollection. "It is fundamental that a defendant charged with commission of a crime should be given great latitude in the cross examination of a prosecution witness to show motive or credibility." *State v. Peterson*, 2 Wn. App. 464, 466, 469 P.2d 980 (1970). Trooper Wiley testified he recalled all of the particulars of Smith's arrest with precision. He could not, however, recall the PBT result. "Where a case stands or falls on the jury's belief or disbelief of essentially one witness, that witness's credibility or motive must be subject to close scrutiny." *State v. Roberts*, 25 Wn. App. 830, 834, 611 P.2d 1297 (1980). Smith was entitled to cross-examine Wiley on this limit to his recollection, and the district court abused its discretion in limiting this cross examination.

But based on this record, we are persuaded such error was harmless. An error is harmless if we are convinced beyond a reasonable doubt that any reasonable jury would have convicted Smith, despite the error. *State v. Aumick*, 126 Wn.2d 422, 430, 894 P.2d 1325 (1995); *State v. Rice*, 120 Wn.2d 549, 569, 844 P.2d 416 (1993). The evidence of Smith's intoxication in the field overwhelmingly established probable cause to arrest Smith and give him the DataMaster test. Trooper Wiley observed Smith driving erratically. Smith did not deny he swerved over the center line; he testified he did so because of inattention. Smith exhibited several indicia of intoxication. Smith did not dispute Wiley's testimony about the field sobriety test results. Trooper Wiley arrested Smith and took him to the police station, where Smith registered a 0.12 reading on the DataMaster. We are convinced beyond a reasonable doubt a jury would have convicted Smith despite any error in the cross examination of Wiley.

## CONCLUSION

The use of the PBT by the State complicated an other-

wise unremarkable DUI case. PBT results are inadmissible in Washington in the absence of approval by the state toxicologist or appropriate determination in a *Frye* hearing the PBT is scientifically reliable.

In this case, there was ample evidence apart from the PBT result to support probable cause to arrest Smith for DUI, and the BAC Verifier DataMaster results were therefore admissible. The district court did not deny due process to Smith in preventing testimony on the PBT result as it did not meet the *Brady/Wittenbarger* test. The district court did abuse its discretion in limiting cross examination of Trooper Wiley on the PBT result for the limited purpose of testing his recollection, but the error was harmless on these facts.

Smith's conviction for DUI is affirmed and the case is remanded to the Spokane County District Court for sentencing.

DURHAM, C.J., and DOLLIVER, SMITH, GUY, JOHNSON, MADSEN, ALEXANDER, and SANDERS, JJ., concur.