[No. 22032-6-II.   Division Two.   August 14, 1998.]

CLAYTON T. THOMPSON, *Appellant*, v. THE DEPARTMENT OF LICENSING, *Respondent*.

---

888

*Bruce J. Finlay* of *Brungardt & Lowe* and *George A. Steele*, for appellant.

*Christine O. Gregoire, Attorney General*, and *Sharon S. Eckholm, Assistant*, for respondent.

ARMSTRONG, J. — Clayton T. Thompson was charged with driving a commercial vehicle with alcohol in his system. RCW 46.25.170(2); RCW 46.25.110. The charge was apparently dismissed after the district court judge suppressed Thompson's breath test, based on a finding that Thompson was given inaccurate and misleading implied consent warnings. In the meantime, the Department of Licensing (the

Department) "disqualified" Thompson's commercial license. *See* RCW 46.25.090 (effective until October 1, 1996); RCW 46.25.120(4). After a hearing examiner affirmed the disqualification, Thompson appealed to the superior court, which sustained the Department following a trial de novo. Thompson contends that the results of his breath test should not have been considered by the superior court because: (1) the trooper did not have reasonable grounds to arrest him for driving while under the influence (DUI); (2) the implied consent warnings were inaccurate because the trooper read warnings for both a DUI under RCW 46.20.308 and for driving a commercial vehicle with alcohol in his system under RCW 46.25.120; and (3) under the doctrine of collateral estoppel, suppression of the breath test in the criminal proceeding precludes relitigation of the issue in the civil trial. We affirm.

## FACTS

At 4:55 P.M. on February 24, 1995, Clayton Thompson pulled his truck into the weigh station in Ridgefield, Washington. Officer Jim Wright, a commercial motor vehicle enforcement officer, noticed that Thompson's eyes were red and slightly watery and that he smelled of intoxicants when he spoke. Wright asked him when he had his last drink, and Thompson said that he had some whiskey earlier that morning. Although Thompson showed no signs of impairment, Wright thought he had "alcohol in his system" and asked him to take a voluntary, portable breath test.[1] Thompson agreed to take the test; it was administered by Officer John Wabel, who also noticed that Thompson had watery, bloodshot eyes and a strong odor of intoxicants. Based on these observations, Wabel also believed that Thompson had "alcohol in his system." According to Wabel, Thompson showed no other signs of impairment.

---

[1]The results of a portable breath test are not admissible as evidence at trial or to establish probable cause for arrest. *See State v. Smith*, 130 Wn.2d 215, 221-22, 922 P.2d 811 (1996); WAC 448-13-020 ("the DataMaster is the only breath test instrument approved by the state toxicologist as a device for the measurement of alcohol in a person's breath.").

After the portable breath test was given, State Patrol Trooper Helen Holland was called to administer a blood alcohol concentration (BAC) verifier test. When she arrived, she first spoke with officers Wright and Wabel and learned that Thompson said that he had been drinking. She then contacted Thompson and also noticed that he had very bloodshot, watery eyes and smelled of "stale" intoxicants. Thompson's performance on six physical tests was "pretty good," but he swayed one and one-half inches on the balance test and did not count out loud on the walk and turn test. Although Holland thought he was slightly impaired, she checked no impairment on her questionnaire because slight impairment is not an option.

Holland then read Thompson his *Miranda* rights.[2] Next, she read the implied consent warnings for breath testing and told Thompson that he was under arrest for a "commercial driver's license DUI." Although there is no crime called "commercial driver's license DUI," Holland checked the "other" box on the form and wrote in these words. She did this because she "knew" that Thompson's BAC was at least .04 or above, which is necessary to disqualify him from driving a commercial vehicle under RCW 46.25.090; but she did not know whether his BAC was at or above a .10, which is necessary to cite him for DUI. Holland then read the implied consent warnings for each offense, which we italicize to highlight the distinctions between the two warnings. First, the DUI warning:

> Warning, *you [are] under arrest* for a commercial driver's license *DUI.*
>
> . . . .
>
> Further, you are now being asked to submit to a test of your breath which consists of two separate samples of your breath, taken independently to determine the alcohol content. You are now advised that you have the right to refuse this test [sic] breath test; *that if you refuse, your privilege to drive will be revoked or denied by the Department of Licensing*; and that

---

[2]*Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A.L.R.3D 974 (1966).

you have the right to additional test[s] administered by a quali-
fied person of your own choosing and that *your refusal to take
the test may be used in a criminal trial.*

Holland then read the commercial motor vehicle implied
consent warning for breath:

> Warning, there is *probable cause to believe you have been
> driving a commercial motor vehicle while having alcohol in
> your system.* Further, you are now being asked to submit to a
> test of your breath which consists of two separate samples of
> your breath, taken independently, to determine alcohol
> content. You are now advised that you have the right to refuse
> this breath test. However, *you will be disqualified by the
> Department of Licensing from operating a commercial vehicle
> if you refuse the test or submit to this test and disclose an
> alcohol concentration of .04 or more.* You are also advised that
> you have the right to additional tests administered by a person
> of your own choosing.

Trooper Holland then explained to Thompson that if his
BAC was .04 or above, but not over a .10 he would be
subject to the commercial warning. But if his alcohol
concentration was over .10 he would be subject to the DUI
warning. Thompson signed both forms and did not express
any confusion about his rights.

During the 15-minute observation period before the
breath test was administered, Holland asked Thompson
whether he had been drinking. He said that he had a half-
quart of whiskey starting at seven o'clock the previous eve-
ning and that he had his last drink between midnight and
one o'clock in the morning. The results of the two breath
tests revealed concentrations of .08 and .07,[3] and Thompson
was cited for driving a commercial vehicle with a .04 BAC
or above. Under RCW 46.25.090 and 46.25.120(4), he was
disqualified from driving a commercial vehicle for at least
one year.

---

[3]Defense counsel objected to the admission of the results of the breath test
but the court overruled the objection without prejudice so that it could be argued
later.

On August 15, 1995, Thompson was prosecuted in Clark County District Court for driving a commercial vehicle with alcohol in his system. RCW 46.25.170(2); 46.25.110. The district court suppressed the breath test after concluding that it was inaccurate and misleading to read both the DUI and the commercial vehicle implied consent warnings. The charge was then apparently dismissed.

On September 14, 1995, Thompson's license disqualification was reviewed by a Department of Licensing hearing examiner. The hearing examiner affirmed the disqualification, and Thompson appealed to the Clark County Superior Court. Thompson argued in a motion for summary judgment and in his trial memorandum that, under the doctrine of collateral estoppel, the district court's suppression of the breath test should prevent relitigation of the same issue in the license disqualification proceeding. He also argued that the breath test should be suppressed because the warnings were inadequate. Following a trial de novo, the superior court sustained the ruling of the hearing examiner.

ANALYSIS
A. Implied Consent Warnings

We first consider whether the results of the breath test should have been suppressed because the warnings were inaccurate: Trooper Holland read Thompson two different implied consent warnings, one for persons who are suspected of driving while under the influence of alcohol and one for commercial drivers. The DUI warning should be given when a person is under arrest because there are reasonable grounds to believe the person has been driving while under the influence of an intoxicating liquor.[4] RCW 46.20.308. The commercial implied consent warning should

---

[4]RCW 46.20.308 provides in pertinent part:

(1) Any person who operates a motor vehicle within this state is deemed to have given consent, subject to the provisions of RCW 46.61.506, to a test or tests of his or her breath or blood for the purpose of determining the alcohol concentration or presence of any drug in his or her breath or blood if arrested

be given to a commercial driver when there is probable cause to believe he is driving with alcohol in his system.[5] RCW 46.25.120. Thompson argues that the trooper did not have probable cause to arrest him for DUI, and, therefore, the DUI warning should not have been given. He also argues that, because the DUI warning contains additional consequences for refusal to take the breath test, he was unable to make an intelligent decision about whether to submit to the test.

■ Implied consent warnings must strictly adhere to the plain language of the statute. *State v. Bostrom*, 127 Wn.2d 580, 587, 902 P.2d 157 (1995). When inaccurate warnings

---

for any offense where, at the time of the arrest, the arresting officer has reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while under the influence of intoxicating liquor or any drug or was in violation of RCW 46.61.503.

(2) The test or tests of breath shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving or in actual physical control of a motor vehicle within this state while under the influence of intoxicating liquor . . . . The officer shall inform the person of his or her right to refuse the breath or blood test, and of his or her right to have additional tests administered by any qualified person of his or her choosing as provided in RCW 46.61.506. The officer shall warn the driver that:

(a) His or her license, permit, or privilege to drive will be revoked or denied if he or she refuses to submit to the test;

(b) His or her license, permit, or privilege to drive will be suspended, revoked, denied, or placed in probationary status if the test is administered and the test indicates the alcohol concentration of the person's breath or blood is 0.10 or more, in the case of a person age twenty-one or over . . . and

(c) His or her refusal to take the test may be used in a criminal trial.

[5]RCW 46.25.120 provides in part:

(1) A person who drives a commercial motor vehicle within this state is deemed to have given consent, subject to RCW 46.61.506, to take a test or tests of that person's blood or breath for the purpose of determining that person's alcohol concentration . . . .

(2) A test or tests may be administered at the direction of a law enforcement officer, who after stopping or detaining the commercial motor vehicle driver, has probable cause to believe that driver was driving a commercial motor vehicle while having alcohol in his or her system.

(3) The law enforcement officer . . . shall warn the person requested to submit to the test that a refusal to submit will result in that person being disqualified from operating a commercial motor vehicle under RCW 46.25.090.

are given, the fundamental question is whether the driver was given the opportunity to make a knowing and intelligent decision to submit to the breath test. *Gonzales v. Department of Licensing*, 112 Wn.2d 890, 896-97, 774 P.2d 1187 (1989). The result of the breath test will be suppressed if (1) the inaccurate warning deprives the driver of the opportunity to make a knowing and intelligent decision, *id.* at 898, and (2) the driver demonstrates that he was actually prejudiced by the inaccurate warning, *State v. Storhoff*, 133 Wn.2d 523, 531-32, 946 P.2d 783 (1997) (overruling *City of Spokane v. Holmberg*, 50 Wn. App. 317, 323-24, 745 P.2d 49 (1987) (holding that implied consent statute requires strict compliance and no showing of prejudice)); *State v. Bartels*, 112 Wn.2d 882, 889-90, 774 P.2d 1183 (1989); *Gonzales*, 112 Wn.2d at 899.

■ Thompson argues that the DUI warning should not have been given because Trooper Holland did not have probable cause to arrest him for DUI, a prerequisite for reading the DUI implied consent warnings. *O'Neill v. Department of Licensing*, 62 Wn. App. 112, 116, 813 P.2d 166 (1991) (citations omitted); *see also State v. Smith*, 130 Wn.2d 215, 223-24 & n.4, 922 P.2d 811 (1996). Probable cause "exists where the totality of the facts and circumstances known to the officers at the time of arrest would warrant a reasonably cautious person to believe an offense is being committed." *Waid v. Department of Licensing*, 43 Wn. App. 32, 34, 714 P.2d 681 (1986) (citing *Watkins v. Department of Licensing*, 33 Wn. App. 853, 658 P.2d 53 (1983)).

■ Thompson contends there was no probable cause to arrest him for DUI because he passed the field sobriety tests and Trooper Holland testified that she was not sure if his BAC was a .10 or above. But looking at the total facts and circumstances known to Trooper Holland at the time of arrest, the evidence supports a finding of probable cause.[6] In *O'Neill*, probable cause was established following a car

---

[6]We are not reviewing the superior court's finding under a sufficiency of the evidence standard because the superior court found only that there was probable

accident based on a strong odor of alcohol; watery, bloodshot eyes; and "thick-tongued," slurred speech. *O'Neill,* 62 Wn. App. at 117-18 & n.3, *cited with approval in Smith,* 130 Wn.2d at 224. Here, each officer testified that Thompson's eyes were bloodshot and watery and that he smelled of intoxicants. In addition, he swayed slightly on the balance test and did not count out loud as instructed on the walk and turn test. Thompson also told Officer Wright that he had been drinking whiskey earlier that morning. This information was relayed to Officer Holland when she arrived at the weigh station. Because there was probable cause to arrest Thompson for DUI, the DUI implied consent warning was properly given.

■ But Thompson argues that he was misled by having both warnings read to him because they have different consequences; i.e., under the DUI implied consent warning, his refusal would result in a license revocation and could be used in a criminal trial. RCW 46.20.308(2)(a), (c). These are not consequences that he faced under the commercial implied consent statute. *See* RCW 46.25.120. Although reciting these additional consequences might induce a person to submit to the breath test, Thompson has failed to demonstrate actual prejudice. Because Thompson's alcohol concentration was above .04 but less than .10, he was subject to penalties and disqualification under the Uniform Commercial Driver's License Act (UCDLA). Under the UCDLA, a refusal to submit to the breath test would have resulted in disqualification of his commercial license for at least one year. RCW 46.25.090(1); 46.25.120(4). By submitting to the test with an alcohol concentration above .04, Thompson received the same penalty. *See* RCW 46.25.090(1)(b). Thus, even if giving two warnings was confusing and may have encouraged him to submit to the test, Thompson was not prejudiced because the result

cause to believe Thompson was driving a commercial vehicle with alcohol in his system. The court did not enter a finding regarding probable cause to arrest for DUI.

would have been the same if he had exercised his right to refuse the test.

## B. Collateral Estoppel

We next consider whether the doctrine of collateral estoppel should have prevented the superior court from considering the results of the breath test in the civil license disqualification proceedings after the district court suppressed the evidence in the criminal trial.

■■ Collateral estoppel prevents relitigation of an issue after a party or a person in privity with that party has had full opportunity to present its case. *Hanson v. City of Snohomish*, 121 Wn.2d 552, 561, 852 P.2d 295 (1993). The purpose of the doctrine is to end disputes, promote judicial economy, and prevent harassment of and inconvenience to the litigants. *Id.* The party asserting collateral estoppel bears the burden of proving four requirements:

> "(1) the issue decided in the prior adjudication must be identical with the one presented in the second; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea of collateral estoppel is asserted must have been a party or in privity with a party to the prior litigation; and (4) application of the doctrine must not work an injustice."

*State v. Williams*, 132 Wn.2d 248, 254, 937 P.2d 1052 (1997) (quoting *State v. Cleveland*, 58 Wn. App. 634, 639, 749 P.2d 546 (1990) (quoting *Beagles v. Seattle-First Nat'l Bank*, 25 Wn. App. 925, 929, 610 P.2d 962 (1980))).

■■■ Because our decision on the fourth element is dispositive, we address only whether application of the doctrine here would work an injustice. In *Franklin v. Klundt*, Division Three held that "collateral estoppel will apply only if the court in the prior determination fully considered the evidence and applied the *correct* law." *Franklin v. Klundt*, 50 Wn. App. 10, 15, 746 P.2d 1228 (1987) (citing

*State v. Frederick*, 100 Wn.2d 550, 559, 674 P.2d 136 (1983) (emphasis added). Here, the district court suppressed the breath test because giving Thompson two implied consent warnings was "confusing and misleading" and "prevented a completely intelligent decision." The district court did not determine whether Thompson was actually prejudiced by receiving two warnings.

The *Storhoff* decision, in which the Supreme Court clarified the requirement of actual prejudice, had not been decided at the time that the district court ruled on the admissibility of Thompson's breath test. *See Storhoff*, 133 Wn.2d at 523 (decided Nov. 13, 1997). But both *Bartels*, 112 Wn.2d 882 (decided June 29, 1989) and *Gonzales*, 112 Wn.2d 890 (decided June 29, 1989) had been decided. In *Storhoff* the court said, "Ultimately, our opinions in both *Bartels* and *Gonzales* required a showing of prejudice." *Storhoff*, 133 Wn.2d at 531. Therefore, the district court did not apply the correct law in suppressing the breath test without a showing that the warnings actually prejudiced Thompson. We conclude that collateral estoppel did not prevent the trial court from considering Thompson's breath test results. Accordingly, we affirm the superior court.

HOUGHTON, C.J., and HUNT, J., concur.

Review granted at 137 Wn.2d 1013 (1999).