[No. 67225-3. En Banc.]
Argued May 25, 1999. Decided August 19, 1999.

CLAYTON THOMPSON, *Petitioner,* v. THE DEPARTMENT OF LICENSING, *Respondent.*

784

*Brungardt & Lowe* by *Bruce J. Finlay*, for petitioner.
*Christine O. Gregoire, Attorney General*, and *Sharon S. Eckholm, Assistant*, for respondent.

TALMADGE, J. — We must decide in this case if an allegedly erroneous decision in a criminal proceeding, from which the State declined to appeal, has preclusive effect in a subsequent administrative action by a State agency against the same individual. Applying our traditional test for collateral estoppel, we hold the decision in the criminal proceeding precludes a different decision in a subsequent administrative action on the same issue. We therefore reverse the Court of Appeals and remand the case to the trial court to direct the Department to reverse the license disqualification.

## ISSUE

Did the trial court properly refuse to apply collateral estoppel to the admissibility of the blood alcohol concentration (BAC) test results suppressed in an earlier criminal proceeding in a later license disqualification proceeding?

## FACTS

Clayton Thompson is a commercial truck driver. In the

late afternoon of February 24, 1995, he was the subject of a random commercial vehicle check at a weigh scale on I-5 near Ridgefield. At the scale, a State Patrol trooper observed Thompson's red, watery eyes. Thompson also smelled of stale alcohol. The trooper asked Thompson if he had consumed alcoholic beverages and Thompson answered he had early that morning. The trooper then asked Thompson to take a portable breath test.[1] A second trooper, who also noted Thompson's watery, red eyes and the odor of alcohol, administered the portable breath test. The second trooper then summoned a third trooper, Helen Holland, who first administered field sobriety tests to Thompson. Although she reported he showed "no impairment," Report of Proceedings at 68, she noted he did poorly on two of the six tests.

Holland then administered a BAC test to Thompson after giving him two different informed consent warnings, the driving under influence (DUI) warning pursuant to RCW 46.20.308, and the specific warning for operators of commercial vehicles pursuant to RCW 46.25.120. Holland explained the differences in the warnings to Thompson who expressed no confusion about them. He did, however, express concern about the effect of the arrest on his job. Nevertheless, he signed two forms, thereby acknowledging the respective warnings he received. Holland obtained readings of 0.07 and 0.08. She also asked Thompson if he had been drinking, and he replied he had drunk a half a quart of whiskey at his home the previous evening between 7:00 P.M. and 1:00 A.M.

The State undertook two separate proceedings against Thompson. The Clark County prosecutor filed charges against Thompson in Clark County District Court for violation of RCW 46.25.170(2), driving a commercial vehicle with alcohol in one's system, a gross misdemeanor. The Department of Licensing (Department) also began administrative commercial license disqualification proceedings.

---

[1] The results of such tests are inadmissible to establish probable cause for DUI. *State v. Smith*, 130 Wn.2d 215, 221-22, 922 P.2d 811 (1996).

Disqualification from driving a commercial motor vehicle occurs pursuant to RCW 46.25.090(1) whenever the Department receives a report from a law enforcement agency that a holder of a commercial driver's license was driving a commercial motor vehicle with a blood alcohol concentration of 0.04 or more, or refused to take a breath test.

In the district court proceeding, Thompson moved to suppress the BAC evidence on the grounds there was no probable cause to detain and test him, and because the informed consent warnings he received were confusing. The district court granted Thompson's motion to suppress the BAC results, stating the informed consent warnings were "confusing and misleading, and would have prevented a completely intelligent decision." Clerk's Papers at 12. Although the record is silent, the gross misdemeanor case was apparently dismissed upon the suppression of the BAC results and the State did not appeal.

The subsequent administrative proceeding had a different course. Because Thompson's BAC result was above 0.04, the Department disqualified his license.[2] He sought a hearing pursuant to RCW 46.25.120(5)[3] on his disqualification from driving commercial motor vehicles.

---

[2]RCW 46.25.090 provides, in pertinent part:

(1) A person is disqualified from driving a commercial motor vehicle for a period of not less than one year if a report has been received by the department pursuant to RCW 46.25.120 . . . of:

. . . .

(b) Driving a commercial motor vehicle while the alcohol concentration in the person's system is 0.04 or more as determined by any testing methods approved by law in this state or any other state or jurisdiction[.]

[3]The statute provides:

(5) Upon receipt of the sworn report of a law enforcement officer under subsection (4) of this section, the department shall disqualify the driver from driving a commercial motor vehicle under RCW 46.25.090, subject to the hearing provisions of RCW 46.20.329 and 46.20.332. The hearing shall be conducted in the county of the arrest. For the purposes of this section, the hearing shall cover the issues of whether a law enforcement officer had reasonable grounds to believe the person had been driving or was in actual physical control of a commercial motor vehicle within this state while having alcohol in the person's system, whether the person refused to submit to the test or tests upon request of the officer after having been informed that the

At the hearing,[4] Thompson stipulated to the accuracy of the BAC readings, but argued the BAC evidence was not admissible because of collateral estoppel stemming from the district court judge's ruling suppressing the BAC evidence in the criminal case. The hearing examiner rejected Thompson's collateral estoppel argument on the ground the burden of proof in an administrative hearing is different from the burden of proof in a criminal trial.

Thompson also argued there was no probable cause to test him, and the implied consent warnings were confusing. The hearing examiner heard evidence from the three troopers involved in the incident and ultimately ruled against Thompson. The hearing examiner found probable cause based on the odor of alcohol and Thompson's admission he had been drinking the night before. The hearing examiner also rejected Thompson's argument the implied consent warnings were confusing, although she did suggest the combined warnings were "overkill." Clerk's Papers at 83-85. The hearing examiner said:

> The fact that Mr. Thompson was read the commercial driver licensing warnings is what I am concerned with. He was. He signed them, and what's really lacking here is for me to find in your favor, Mr. Finlay [Thompson's attorney], is that the reading of both warnings confused your client, and he expressed

refusal would result in the disqualification of the person from driving a commercial motor vehicle, and, if the test was administered, whether the results indicated an alcohol concentration of 0.04 percent or more. The department shall order that the disqualification of the person either be rescinded or sustained. Any decision by the department disqualifying a person from driving a commercial motor vehicle is stayed and does not take effect while a formal hearing is pending under this section or during the pendency of a subsequent appeal to superior court so long as there is no conviction for a moving violation or no finding that the person has committed a traffic infraction that is a moving violation during the pendency of the hearing and appeal. If the disqualification of the person is sustained after the hearing, the person who is disqualified may file a petition in the superior court of the county of arrest to review the final order of disqualification by the department in the manner provided in RCW 46.20.334.

RCW 46.25.120(5).

[4]We have no official record of the hearing. The parties have submitted only a transcription of the hearing produced by a paralegal in Thompson's attorney's office. The Department has not objected.

any confusion to Trooper Holland. That's missing here, and on any implied consent cases that involve a problem with the warnings that are read to a person, as you well know if you've done implied consent cases, that confusion has to be expressed. And I did not hear any mention of that from Trooper Holland in her proceedings of presenting the forms to Mr. Thompson for signature. I didn't hear any concerns about questions that he had, such as "Wait a minute here, what am I being charged with?", and I don't find any irreparable harm that was done by reading both sets of warnings. I think you have to have . . . . you have to have an effect that was felt on your client at the time, for you to come into a hearing procedure and say, well, this was wrong. It may have been wrong in proper reading of implied consent warnings, but your client was still read the appropriate warnings, had no questions, apparently, about it, and proceeded with the test, so I'm not going to cancel a proceeding based on an argument that he was read too much, or something he shouldn't have been read, when he has shown no argument about how that affected him.

Clerk's Papers at 84-85. As a result of the hearing, the Department issued an Order of Disqualification, disqualifying Thompson from driving a commercial vehicle for one year.

Thompson then petitioned the Clark County Superior Court for review of the Order of Disqualification. RCW 46.20.334; RCW 46.25.120(5). After a de novo evidentiary hearing, the trial court issued findings of fact and conclusions of law upholding the Department's determination. Thompson appealed to the Court of Appeals, Division Two.

Before the Court of Appeals, Thompson assigned error to the trial court's failure to apply collateral estoppel to the determination by the district court to suppress the BAC test results because of the confusing implied consent warnings. He also assigned error to the trial court's finding of fact that Trooper Holland had probable cause to believe Thompson was driving a commercial vehicle with alcohol in his system. Br. of Appellant at 5-6. The Court of Appeals affirmed the trial court decision. *Thompson v. Department of Licensing*, 91 Wn. App. 887, 960 P.2d 475 (1998). The

Court of Appeals refused to apply collateral estoppel because Thompson failed to show he was prejudiced by the implied consent warnings. The Court of Appeals concluded the district court therefore made an erroneous legal decision by suppressing the evidence of the BAC test results, and collateral estoppel was not applicable. *Thompson*, 91 Wn. App. at 898. With regard to the probable cause issue, the Court of Appeals agreed with the trial court that Thompson's red and watery eyes, odor of alcohol, and admission of recent whiskey drinking constituted probable cause to conduct the BAC tests. *Id.* at 896. Thompson sought review here, identifying as his sole issue whether the Court of Appeals erred in declining to apply collateral estoppel to prevent the admission of the BAC evidence. We granted review.

## ANALYSIS

■ Thompson claims the hearing examiner and the superior court should have applied collateral estoppel to the suppression ruling by the district court in his criminal trial and thereby prevented evidence of his BAC test results from being introduced into evidence in his commercial driver's license disqualification proceedings. We have *recently set forth the test for application of collateral estoppel:*

> Before the doctrine of collateral estoppel may be applied, the party asserting the doctrine must prove: (1) the issue decided in the prior adjudication is identical with the one presented in the second action; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with the party to the prior adjudication; and (4) application of the doctrine does not work an injustice.

*Nielson v. Spanaway Gen. Med. Clinic, Inc.*, 135 Wn.2d 255, 262-63, 956 P.2d 312 (1998). *See also State v. Williams*, 132 Wn.2d 248, 254, 937 P.2d 1052 (1997). In applying this test, we examine each of the requirements in order.

A. Same Issues

■ The first part of the collateral estoppel analysis asks if the issue decided in the prior adjudication is identical with the one presented in the second action. In Thompson's gross misdemeanor trial, the district court found Thompson had been given misleading and confusing warnings thereby preventing him from making an intelligent decision whether or not to take the BAC test. The relevant inquiry was whether "the warnings given afforded [Thompson] the opportunity to make a knowing and intelligent decision whether to take the Breathalyzer test." *Gonzales v. Department of Licensing*, 112 Wn.2d 890, 897, 774 P.2d 1187 (1989). The words "knowingly and intelligently" in the context of the implied consent warning first appeared in our law in *Connolly v. State*, 79 Wn.2d 500, 504, 487 P.2d 1050 (1971). The failure to provide the driver with the opportunity to make a knowing and intelligent decision whether to take or refuse to take a test of his blood alcohol results in invalidation of the driver's license revocation. *Id. Accord State v. Whitman County Dist. Court*, 105 Wn.2d 278, 282, 714 P.2d 1183 (1986). A similar result obtains in the criminal context. *State v. Trevino*, 127 Wn.2d 735, 747, 903 P.2d 447 (1995) (accused has the right to make a knowing and intelligent decision whether or not to submit to a breath test, and "[f]ailure to give a proper implied consent warning will result in the suppression of the results of the [B]reathalyzer test").

Neither party has directly addressed whether the driver's license revocation "knowing and intelligent decision" rule applies in commercial driver's license disqualification proceedings. This is a question of first impression.

The "knowing and intelligent decision" rule applies now both to criminal proceedings and to administrative driver's license revocation hearings: the accused must have been able to make a knowing and intelligent decision whether to take the BAC test. No good reason presents itself for creating a different rule for commercial driver's license disqualification hearings. The rule is anchored in fundamental fair-

ness and due process, although we have previously considered the rule as a right "granted through the statutory process." *Whitman County Dist. Court*, 105 Wn.2d at 281.

In the case of a commercial driver's license disqualification, the stakes may often be higher for the licensee, because his or her livelihood is involved, whereas a noncommercial driver's license revocation may simply result in nothing more than inconvenience for the licensee. Thus, a proper implied consent warning may be more imperative in commercial license cases. Moreover, the operative language of the implied consent statute for the operation of motor vehicles is nearly identical to the operative language of the implied consent statute for the operation of commercial motor vehicles.[5] Thus, we hold the "knowing and intelligent decision" rule properly applies to commercial driver's license disqualification hearings, just as it presently applies to motor vehicle driver's license revocation hearings. As in motor vehicle driver's license revocation hearings, in the absence of an implied consent warning giving a commercial licensee the opportunity to make a knowing and intelligent decision, the BAC test results are inadmissible in the disqualification hearing.

Because the "knowing and intelligent decision" rule applies in commercial driver's license disqualification hearings, the issue in both the district court criminal trial and the subsequent administrative hearing is identical— whether the implied consent warning was valid under the "knowing and intelligent decision" rule.[6] Thus, the first test is met.

---

[5] RCW 46.20.308(1) provides, in pertinent part: "Any person who operates a motor vehicle within this state is deemed to have given consent . . . to a test or tests of his or her breath or blood for the purpose of determining the alcohol concentration[.]" RCW 46.25.120(1) provides, in pertinent part: "A person who drives a commercial motor vehicle within this state is deemed to have given consent . . . to take a test or tests of that person's blood or breath for the purpose of determining that person's alcohol concentration[.]"

[6] The hearing examiner below believed the "knowing and intelligent decision" rule applicable and considered it on the merits.

## B. Final Adjudication on the Merits

The second part of the collateral estoppel analysis asks whether the prior adjudication ended in a final judgment on the merits. Although the record does not so indicate, the district court gross misdemeanor action against Thompson was apparently dismissed after the district court suppressed the evidence of the BAC test results. The Department complained about the lack of a competent record of the district court proceeding. Br. of Resp't at 7-8. The only information in the record about the district court proceedings that would constitute competent evidence is Thompson's own declaration, which stated, "[District Court] Judge Stoker suppressed, based upon the confusion and uncertainty caused when the trooper chose to read two different implied consent warning forms to me." Clerk's Papers at 23. The Court of Appeals did not address the Department's argument that there is no official record of the district court's ruling or disposition of the gross misdemeanor charges against Thompson. The Department does not suggest, however, the ruling and disposition were other than as Thompson has represented them to be. Thus, the prior adjudication ended in a final judgment on the merits.

## C. Same Parties

The third part of the analysis asks whether the same party or parties in privity with the parties from the first action are involved in both proceedings. They were. In the district court action, the prosecutor was the State of Washington in the person of a Clark County deputy prosecuting attorney. In the administrative action, the State of Washington appeared in the person of the Department of Licensing. Although the Department argued in the Court of Appeals the Clark County deputy prosecutor, appearing for the State, and the Department itself, are two different entities for the purpose of the privity question, see Br. of Resp't at 14-15, it has since abandoned that untenable argument and has failed to repeat it in either its Response to Petition for Discretionary Review or its Supplemental Brief of Respondent. In *State v. Cleveland*, 58 Wn. App.

634, 639-40, 794 P.2d 546 (1990), *cert. denied*, 499 U.S. 948, 111 S. Ct. 1415, 113 L. Ed. 2d 468 (1991), the Court of Appeals considered the identity of the parties in a collateral estoppel analysis and said, "It is immaterial that in the dependency proceeding, the State was represented by the Attorney General and in the criminal prosecution was represented by the county prosecuting attorney." As we said in *State v. Dupard*, 93 Wn.2d 268, 273, 609 P.2d 961 (1980), "The same sovereign is involved in both instances." *Accord Williams*, 132 Wn.2d at 255 (assistant attorney general and prosecutor both represent the State). The same parties were involved in both proceedings here.

D. Injustice

The fourth part of the collateral estoppel analysis asks whether application of the doctrine would result in an injustice. The injustice inquiry had its origin in *Henderson v. Bardahl Int'l Corp.*, 72 Wn.2d 109, 119, 431 P.2d 961 (1967), where we said, "It is generally recognized that the doctrine of res judicata (and this applies to that branch known as collateral estoppel by judgment) is not to be applied so rigidly as to defeat the ends of justice, or to work an injustice." *Accord Reninger v. Department of Corrections*, 134 Wn.2d 437, 451, 951 P.2d 782 (1998) (testing for injustice a "fundamental aspect" of collateral estoppel doctrine).

■ The issue in this case is what is meant by injustice. Some Washington cases appear to suggest an incorrect result is injustice per se. *See State v. Frederick*, 100 Wn.2d 550, 559, 674 P.2d 136 (1983) (collateral estoppel pertains only if prior court "applied the correct law"); *Franklin v. Klundt,* 50 Wn. App. 10, 14-15, 746 P.2d 1228 (1987) ("injustice would result if a subsequent ruling on an issue was controlled by a clearly erroneous prior determination on a purely legal question," citing *Frederick*). We note neither *Frederick* nor *Franklin* provided any analysis of their definition of injustice. Numerous other jurisdictions have discussed injustice stemming from application of collateral

estoppel.[7] Other Washington decisions suggest if the initial tribunal erred, but the parties could have corrected the error by further legal proceedings, courts should afford preclusive effect to the erroneous legal conclusion. *Hanson v. City of Snohomish*, 121 Wn.2d 552, 852 P.2d 295 (1993); *Kinsey v. Duteau*, 126 Wash. 330, 218 P. 230 (1923); *Barlindal v. City of Bonney Lake*, 84 Wn. App. 135, 925 P.2d 1289 (1996). We must resolve the dissonance in our cases on the meaning of the injustice prong of the collateral estoppel doctrine.

The State maintains because the trial court's ruling was incorrect as a matter of law, it would work an injustice to give that ruling preclusive effect. Viewed in this way, injustice means substantive injustice: if the prior court erred on the law, the subsequent court should not be bound by the prior ruling. Appealing as the State's argument may be, adopting it as a rule would tend to eviscerate the collateral estoppel doctrine. In every case the litigant who lost on a point of law before a prior tribunal would have the opportunity to reargue that same point of law before a subsequent tribunal when the opponent attempted to apply collateral estoppel. Judicial economy and the desirability of avoiding inconsistent results militate against a rule stating the meaning of injustice in the context of collateral estoppel means a substantively incorrect prior decision.

We note our case law on this injustice element is most firmly rooted in procedural unfairness. "Washington courts look to whether the parties to the earlier proceeding

---

[7]Collateral estoppel under Georgia law would not apply to a transfer order made after stipulation by the parties based upon the prior court's erroneous reading of federal law. *Lops v. Lops*, 140 F.3d 927, 942 (11th Cir. 1998), *cert. denied*, 525 U.S. 1158, 119 S. Ct. 1068, 143 L. Ed. 2d 71 (1999). Injustice may result from the application of collateral estoppel if there is an intervening change in controlling law. *George Arakelian Farms, Inc. v. Agricultural Labor Relations Bd.*, 49 Cal. 3d 1279, 783 P.2d 749, 756, 265 Cal. Rptr. 162 (1989). Courts will not apply collateral estoppel where the law "had been 'unsatisfactory in its statement' " at the time of the prior adjudication. *Di Genova v. State Bd. of Educ.*, 57 Cal. 2d 167, 367 P.2d 865, 872, 18 Cal. Rptr. 369 (1962). Manifest injustice in application of collateral estoppel would result where litigant did not have a meaningful opportunity to appeal prior decision. *Brown v. City of Dayton*, Nos. 16875, 16876, 1998 WL 852636, at *10 (Ohio Ct. App. Dec. 11, 1998), *appeal allowed*, 85 Ohio St. 3d 1446, 708 N.E.2d 211 (1999).

received a full and fair hearing on the issue in question."
*In re Marriage of Murphy*, 90 Wn. App. 488, 498, 952 P.2d
624 (1998). We have noted the unfairness of permitting an
adjudication in an informal administrative setting, for
example, to bar later criminal prosecutions. *See, e.g., State
v. Williams*, 132 Wn.2d 248, 937 P.2d 1052 (1997) (adminis-
trative hearing to recoup overpayment of financial assis-
tance sufficiently different from criminal proceeding for
welfare fraud that collateral estoppel not applicable); *Dup-
ard*, 93 Wn.2d at 276 (determination of innocence by pa-
role board did not preclude subsequent criminal trial on
same facts because purpose of parole board hearing was to
determine parole violation, while criminal proceeding was
to determine if new crime committed). We have held on the
other hand, however, an administrative decision may have
preclusive effect on a subsequent civil action where the
parties had ample incentive to litigate issues even though
the remedies available in the two arenas were not identi-
cal. *Shoemaker v. City of Bremerton*, 109 Wn.2d 504, 745
P.2d 858 (1987); *Reninger v. Department of Corrections*, 134
Wn.2d 437. We have even looked at differences in the
burden of proof in the respective proceedings, as did the
administrative law judge below in Thompson's license re-
vocation hearing. *See, e.g., Beckett v. Department of Soc. &
Health Servs.*, 87 Wn.2d 184, 186-88, 550 P.2d 529 (1976)
(criminal acquittal did not preclude later civil fraud case
because of different burdens of proof), *overruled on other
grounds by Dunner v. McLaughlin*, 100 Wn.2d 832, 843,
676 P.2d 444 (1984); *Standlee v. Smith*, 83 Wn.2d 405, 518
P.2d 721 (1974) (acquittal in criminal trial not preclusive of
finding of guilt in parole revocation hearing on same facts
because burden of proof lower in hearing).

■ In the present case, the Department argues applica-
tion of collateral estoppel would be unjust for policy
reasons. The Department contends because "the purposes
of the driver's license proceeding are separate and distinct
from those supporting criminal prosecution," and because
a "criminal proceeding has no bearing on the civil driver's

license proceeding," the suppression ruling in the district court criminal proceeding should not have collateral estoppel effect in the subsequent administrative proceeding. Supplemental Br. of Resp't at 11-13. While it may be true the *result* of the criminal trial ought to have no bearing on the outcome of the license disqualification proceedings, it does not follow that a fully litigated and contested *evidentiary ruling* in the criminal trial ought not have preclusive effect in a subsequent administrative proceeding, especially where, as in the present case, the same law as to admissibility applies.

The Department further maintains because the burden of proof in a criminal trial differs from the burden of proof in an administrative proceeding, collateral estoppel should not apply. Br. of Resp't at 9-14; Supplemental Br. of Resp't at 9-16. We disagree. While the burden of proof *to convict* in a criminal proceeding—beyond a reasonable doubt—is different from the ordinary burden of proof to resolve a dispute in an administrative proceeding—preponderance of the evidence (unless otherwise mandated by statute or due process of law)—the district court's suppression of the BAC test results was simply an *evidentiary ruling*, not a final determination embodying a particular burden of proof. The differing burdens of proof controlling the final outcome are irrelevant to the evidentiary ruling as to the admissibility of the BAC test results.

The Court of Appeals did not accept the Department's collateral estoppel policy arguments, but faulted the district court for an error of law—it failed to take into account whether Thompson had been prejudiced by the allegedly confusing and misleading implied consent warnings. *Thompson*, 91 Wn. App. at 898. We agree the Department may very well be correct the district court erred in suppressing the breath evidence.[8]

But even if the district court erred in applying the

---

[8]Well-established Washington law requires consideration of prejudice to the driver arising from the warnings with respect to the breath test. In *Gonzales*, 112 Wn.2d at 901, we held a showing of actual prejudice to the driver is appropriate in a *civil* action where the arresting officer has given all of the warnings, but

requirement of actual prejudice in warnings regarding the Breathalyzer and the warnings to Thompson were not prejudicial, we believe we must give preclusive effect to the district court ruling. We believe cases like *Hanson* and *Barlindal* more accurately reflect our rules on collateral estoppel than *Frederick* or *Franklin*. To the extent they are to the contrary, we overrule *Frederick* and *Franklin*.

---

merely failed to do so in a 100 percent accurate manner. *State v. Bartels*, 112 Wn.2d 882, 889, 774 P.2d 1183 (1989). *Accord Frank v. Department of Licensing*, 71 Wn. App. 585, 859 P.2d 1248 (1993); *Gahagan v. Department of Licensing*, 59 Wn. App. 703, 800 P.2d 844 (1990); *Graham v. Department of Licensing*, 56 Wn. App. 677, 784 P.2d 1295 (1990). More recently, in *State v. Storhoff*, 133 Wn.2d 523, 532, 946 P.2d 783 (1997) (overruling *City of Spokane v. Holmberg*, 50 Wn. App. 317, 745 P.2d 49 (1987), *review denied*, 110 Wn.2d 1013 (1988)), we held "in the absence of actual prejudice to the Defendants, the incorrect DOL notices do not invalidate the revocation of the Defendants' licenses, or otherwise preclude their prosecution for driving while license revoked."

As the hearing examiner held, the implied consent warnings Thompson received were in fact not confusing or misleading. Each warning correctly stated the law. Thompson signed both and told Trooper Holland he understood them after Trooper Holland had explained the difference between a regular DUI implied consent warning and a commercial DUI implied consent warning. Thompson professed no confusion at the time. Report of Proceedings at 49. "Where a driver objectively manifests confusion over his or her implied consent rights, the officer is required to clarify them." *Gonzales*, 112 Wn.2d at 906. "A driver has the burden of showing his confusion was apparent to the officer and that he was thereafter denied clarification." *Department of Licensing v. Sheeks*, 47 Wn. App. 65, 68, 734 P.2d 24, *review denied*, 108 Wn.2d 1021 (1987). Thompson manifested no confusion at the time he received the implied consent warnings from Trooper Holland and he was not denied clarification. Thus, Thompson may not actually have been prejudiced by the implied consent warnings.

The Court of Appeals also held there was no prejudice because Thompson's commercial license would have been disqualified for one year no matter what course he took. That is, refusal would have resulted in a one-year disqualification under the statute, and taking the test resulted in a one-year disqualification because his reading was above 0.04. *Thompson*, 91 Wn. App. at 896-97. This analysis is too facile. It depends on the fortuity that a driver's BAC result will be above 0.04, and provides no disincentive to law enforcement officials to give improper implied consent warnings. As Thompson correctly notes, "If the Court of Appeals is correct as to the meaning of prejudice, then the trooper did not need to give Thompson any implied consent warnings, because no matter what Thompson's decision, the penalty would be the same, and therefore, no prejudice." Pet. for Review at 7. In the apt words of Judge Munson, "The City and County both argued that suppression of these results would penalize society simply because the officers derogated from the statute's mandate and since the defendants were not prejudiced by this derogation. We disagree. Society is penalized when officers derogate from the mandates of the Legislature." *City of Spokane v. Holmberg*, 50 Wn. App. 317, 323-24, 745 P.2d 49 (1987), *review denied*, 110 Wn.2d 1013 (1988), *overruled on other grounds by State v. Storhoff*, 133 Wn.2d 523, 946 P.2d 783 (1997).

Here, the State had every incentive to litigate fully the issue of the admissibility of the BAC results in the criminal proceeding. The criminal proceeding had more dire consequences for Thompson, affecting both Thompson's liberty and his commercial driver's license. The State had the capability to present the issue through the good offices of the Clark County Prosecuting Attorney. The State had the opportunity to litigate the issue in the district court and correct the erroneous result if necessary by appeal to superior court. That it did not do so means the result in the first proceeding has preclusive effect. The public policy of avoiding a duplication of proceedings where the parties had ample incentive and opportunity to litigate an issue indicates that no injustice is done in giving preclusive effect to a decision from the first proceeding, even if, as here, we may have reason to believe the first result was erroneous. We adhere to the statement we made in *Kinsey* 76 years ago:

> It may be that the court was in error in its ruling on the demurrer. We think it was. This would undoubtedly have subjected the judgment to reversal on appeal, or to reversal by some other form of direct attack, but it does not subject it to a collateral attack. So long as it stands of record unreversed, it is conclusive as against the parties thereto or in privity therewith, as to all matters litigated therein.

*Kinsey*, 126 Wash. at 333.

In summary, the injustice prong of the collateral estoppel doctrine calls from an examination primarily of procedural regularity. This is not to rule out substantive analysis entirely, as when, for instance, there is an intervening change in the law, or the law applicable at the time of the first hearing was not well-explained and required subsequent exposition. But where, as here, a party to the prior litigation had a full and fair hearing of the issues, and did

not attempt to overturn an adverse outcome, collateral estoppel may apply, notwithstanding an erroneous result.

## CONCLUSION

Commercial driver's license disqualification proceedings are on the same footing as driver's license revocation hearings, and the same implied consent law should apply to both, except to the extent there may be statutory differences. Collateral estoppel ordinarily applies to a ruling made in a criminal trial when the same facts and law are considered in a subsequent administrative proceeding. In this case, there was no injustice in applying collateral estoppel to the introduction of evidence of Thompson's BAC readings in his commercial driver's license disqualification proceedings even though the district court in the criminal case failed to apply the proper law to its determination. The State had the incentive, capability, and opportunity to litigate fully the issue in the criminal case and it must abide the result it did not appeal from. We reverse the Court of Appeals and remand this case to the superior court to direct the Department to vacate its Order of Disqualification.

Guy, C.J., Smith, Johnson, Madsen, Alexander, Sanders, and Ireland, JJ., and Sweeney, J. Pro Tem., concur.